861 A.2d 123

CHERRY HILL MANOR ASSOCIATES, PLAINTIFF, v. PAUL FAUG-
NO, ESQ., AND ROGAN & FAUGNO, ESQS., DEFENDANTS–
THIRD PARTY PLAINTIFFS–RESPONDENTS, AND HARLEYS-
VILLE INSURANCE COMPANY OF NEW JERSEY, THIRD
PARTY DEFENDANT, AND TIMOTHY TUTTLE, ESQ., ROBERT
J. MANCINELLI, ESQ., AND CARVER & MANCINELLI, ESQS.,
THIRD PARTY DEFENDANTS–APPELLANTS.

Argued October 28, 2004—Decided December 6, 2004.

*Christopher J. Carey* argued the cause for appellants *Robert J. Mancinelli*, Esq., and *Carver & Mancinelli*, Esqs. (*Graham, Curtin & Sheridan*, attorneys; *Mr. Carey* and *Patricia A. Brennan*, on the briefs).

*Leon B. Piechta* argued the cause for appellant *Timothy Tuttle*, Esq. (*O'Donnell Piechta*, attorneys).

*Lance J. Kalik* argued the cause for respondents (*Riker Danzig Scherer Hyland & Perretti*, attorneys; *Mr. Kalik* and *Glenn A. Clark*, of counsel; *Mr. Kalik* and *Ronald Z. Ahrens*, on the briefs).

Justice RIVERA–SOTO delivered the opinion of the Court.

These consolidated petitions for certification present the question whether a defendant can seek statutory contribution against third-party defendants when the original plaintiff is legally barred from proceeding directly against any of the third-party defendants. The trial court held that the third-party defendants could not be considered joint tortfeasors with the defendant because the third-party defendants were not jointly or severally liable in tort for the same injury to plaintiff as was defendant. The Appellate Division disagreed, reversed the grant of summary judgment in favor of the third-party defendants, and remanded the cause for trial. *Cherry Hill Manor Assocs. v. Faugno*, 365 *N.J.Super.* 313, 839 *A.*2d 95 (App.Div.2004).

We hold that, under the circumstances present here, the third-party defendants were not jointly liable for the same injury to plaintiff as was defendant. We, therefore, reverse the judgment of the Appellate Division and reinstate the judgment of the trial court granting summary judgment in favor of the third-party defendants and against defendant.

## I.

As with many a convoluted tale, this one started simply enough. However, in order to fairly present the relevant facts, we must

wind our way back some eighteen years through one failed business transaction, three prior lawsuits, one bankruptcy proceeding, two prior appeals to the Appellate Division, and one earlier denial of certification from this Court before we even reach this case.

During October 1986, plaintiff Cherry Hill Manor Associates attempted to purchase a then-mostly unbuilt 16–unit condominium project from Cherry Hill Manor, Inc. (Seller). In this purchase and sale, plaintiff was represented by Timothy Tuttle, Esq. (Tuttle). As part of its contractual obligations, plaintiff paid both a $300,000 deposit and advanced an additional $345,000 to Seller. As counsel for plaintiff, Tuttle was charged with the obligation to insure that plaintiff's deposit monies and advances were secured by a purchase money mortgage on the condominium project. Matters quickly deteriorated. For reasons undisclosed in this record, the purchase money mortgage that was to secure plaintiff's investment in this project was neither delivered nor filed of record and, eventually, Seller defaulted on the transaction.

Three years later, plaintiff retained Robert J. Mancinelli, Esq. and his law firm, Carver & Mancinelli (collectively, Mancinelli), to recover from Seller the aggregate of $645,000 in deposit monies and advances paid by plaintiff. On November 8, 1989, plaintiff, through its lawyer Mancinelli, sued Seller; for reasons also unexplained in this record, plaintiff did not name its original lawyer, Tuttle, as a party defendant in that suit. Seller filed a voluntary petition in bankruptcy and, on April 24, 1992, Seller's debts were discharged. Faced with no prospect of recovery, plaintiff dismissed its complaint against Seller.

More time passed and plaintiff again changed lawyers, this time retaining as its third set of lawyers, Paul Faugno, Esq. and his law firm, Rogan & Faugno (collectively, Faugno). On October 7, 1992, plaintiff, through its lawyer Faugno, sued Tuttle, claiming that Tuttle committed malpractice when, in 1986, Tuttle failed to secure plaintiff's deposit monies and advances by a purchase money mortgage. Tuttle sought dismissal under the entire contro-

versy doctrine, claiming that any claims by plaintiff against him should have been brought as part of the original lawsuit filed on plaintiff's behalf by Mancinelli and against Seller. Tuttle's application was denied and, on June 21, 1994, Tuttle filed a third-party complaint against Mancinelli for contribution as a joint tortfeasor. Although Tuttle claimed that his successor lawyer, Mancinelli, was liable to Tuttle in contribution as a joint tortfeasor, Faugno did not seek to amend the complaint he filed against Tuttle to assert a claim directly against Mancinelli.

On February 26, 1994, the Appellate Division handed down *Circle Chevrolet Co. v. Giordano, Halleran & Ciesla*, 274 *N.J.Super.* 405, 644 *A.*2d 626 (App.Div.1994), *aff'd*, 142 *N.J.* 280, 662 *A.*2d 509 (1995), holding that the entire controversy doctrine barred a suit for attorney malpractice that was not asserted in the underlying litigation. Relying on *Circle Chevrolet*, Tuttle renewed his motion for summary judgment based on the entire controversy doctrine, this time successfully. On November 28, 1994, the trial court granted Tuttle's summary judgment motion and dismissed the claims against Tuttle which, in turn, caused the dismissal of the third-party complaint against Mancinelli. Faugno, on behalf of plaintiff, sought appellate review and, in an unreported decision, the trial court's grant of summary judgment in Tuttle's favor was affirmed and a petition for certification was denied. *Neubaur v. Tuttle*, No. A–2341–94T3 (App.Div. Dec. 13, 1995), *certif. denied*, 144 *N.J.* 173, 675 *A.*2d 1121 (1996).

Three years after the trial court granted Tuttle's summary judgment motion, this Court concluded that "the entire controversy doctrine no longer compels the assertion of a legal-malpractice claim in an underlying action that gives rise to the claim" and abrogated its earlier holding in *Circle Chevrolet*. *Olds v. Donnelly*, 150 *N.J.* 424, 443, 696 *A.*2d 633 (1997). Seizing on that apparent opportunity, Faugno referred this matter to Anthony V. D'Elia, Esq. (D'Elia), who, in turn, filed a malpractice action on behalf of plaintiff and against Mancinelli claiming that Mancinelli should have included Tuttle as a party defendant in the original

action against Seller. However, because the rule of *Olds v. Donnelly, supra*, was granted only limited retroactivity as to those cases that were then pending, either on appeal or in the trial courts, *id.* at 449, 696 *A.*2d 633, and plaintiff's suit against Tuttle was already final, on December 8, 1998, the trial court granted Mancinelli's motion for summary judgment. The trial court explained that plaintiff should have joined Mancinelli in the litigation against Tuttle and, therefore, plaintiff's claim against Mancinelli continued to be barred by the entire controversy doctrine. Plaintiff appealed that ruling, and the Appellate Division, in an unpublished decision, affirmed the trial court.

We finally come to the action presently before this Court. On March 29, 1999, three months after the trial court entered summary judgment in favor of Mancinelli and while plaintiff's appeal of the ruling was still pending, plaintiff, through D'Elia, filed a malpractice action against Faugno. It claimed that Faugno committed malpractice by failing to join Mancinelli as a party defendant in the action against Tuttle, particularly when Tuttle had filed a third-party complaint in contribution against Mancinelli. On April 27, 2000, Faugno filed an answer, affirmative defenses and jury trial demand, together with a third-party complaint against both Tuttle and Mancinelli for contribution and/or indemnity under the Joint Tortfeasors Contribution Law, *N.J.S.A.* 2A:53A–1 to –5 (JTCL). Tuttle and Mancinelli moved for summary judgment and, on December 1, 2000, the trial court granted their motions, holding that Tuttle and Mancinelli could not be sued for contribution because neither Tuttle nor Mancinelli was Faugno's joint tortfeasor as defined in the JTCL. Faugno did not seek leave to appeal that decision until more than thirteen months later and that application was denied.

Trial between plaintiff and Faugno commenced on September 3, 2002. On September 6, 2002, they settled the controversy between them by agreeing that judgment would be entered in favor of plaintiff and against Faugno in the amount of $575,000. That

settlement was reduced to a consent judgment pursuant to *R.* 4:42–1(d) and was entered by the trial court on October 21, 2002.

Once the dispute between plaintiff and Faugno was resolved, Faugno sought to revive his joint tortfeasor contribution claim against Tuttle and Mancinelli. The next day, on October 22, 2002, Faugno filed a notice of appeal and civil appeal case information statement with the Appellate Division, and identified the issue on appeal as "[w]hether the trial court erred in dismissing the claims for contribution and indemnification by [Faugno] against [Tuttle and Mancinelli]." The Appellate Division held that, as a matter of law, Faugno should be permitted to pursue his contribution and indemnity claims under the Joint Tortfeasors Contribution Law against Tuttle and Mancinelli and, accordingly, reversed the trial court's grant of summary judgment and remanded the cause for further proceedings. *Cherry Hill Manor Assocs. v. Faugno,* 365 *N.J.Super.* 313, 839 *A.*2d 95 (App.Div.2004). We granted certification. 180 *N.J.* 151, 849 *A.*2d 184 (2004). For the reasons that follow, we reverse the judgment of the Appellate Division and reinstate the judgment of the trial court's grant of summary judgment in favor of Tuttle and Mancinelli and against Faugno on Faugno's third-party complaint for contribution and/or indemnity.

## II.

Our analysis focuses on the JTCL, *N.J.S.A.* 2A:53A–1 to –5, which provides, in its operative section, that

Where injury or damage is suffered by any person as a result of the wrongful act, neglect or default of joint tortfeasors, and the person so suffering injury or damage recovers a money judgment or judgments for such injury or damage against one or more of the joint tortfeasors, either in one action or in separate actions, and any one of the joint tortfeasors pays such judgment in whole or in part, he shall be entitled to recover contribution from the other joint tortfeasor or joint tortfeasors for the excess so paid over his pro rata share; but no person shall be entitled to recover contribution under this act from any person entitled to be indemnified by him in respect to the liability for which the contribution is sought.

[*N.J.S.A.* 2A:53A–3.]

However, in order to trigger the contribution obligations of the JTCL, the statutory definition of a "joint tortfeasor" must be satisfied:

> For the purpose of this act the term "joint tortfeasors" means two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them. A master and servant or principal and agent shall be considered a single tortfeasor. [*N.J.S.A.* 2A:53A–1.]

We inquire, then, whether the alleged malpractice of Tuttle and Mancinelli, which preceded in time Faugno's alleged malpractice, constitute "joint liability" for the "same injury."

## III.

### A.  *Joint Liability.*

■  It is well settled that "the true test [for joint tortfeasor contribution] is joint liability and *not* joint, common or concurrent negligence." *Farren v. New Jersey Tpk. Auth.,* 31 *N.J.Super.* 356, 362, 106 *A.*2d 752 (App.Div.1954) (emphasis supplied) (citing *Guerriero v. U–Drive–It Co. of New Jersey,* 22 *N.J.Super.* 588, 603, 92 *A.*2d 140 (Law Div.1952)).  The test's core proposition may be stated succinctly: "It is common liability at the time of the accrual of plaintiff's cause of action which is the Sine qua non of defendant's contribution right." *Markey v. Skog,* 129 *N.J.Super.* 192, 200, 322 *A.*2d 513 (Law Div.1974).

■  In order, therefore, to answer whether tortfeasors are "joint" under the JTCL, we ask whether Tuttle, Mancinelli and Faugno are subject to common liability to the plaintiff at the time the plaintiff's cause of action accrued.  Here, Tuttle's alleged negligence, and plaintiff's cause of action against Tuttle, arose in 1986, when Tuttle failed to record the purchase money mortgage that would have secured plaintiff's $645,000 in deposit monies and advances against the property it was seeking to purchase, which was well before either Mancinelli or Faugno became involved with plaintiff.  In contrast, Mancinelli's alleged negligence, and plaintiff's cause of action against Mancinelli, arose in 1989 when

Mancinelli failed to name Tuttle as a party defendant in the lawsuit seeking recovery of plaintiff's deposit monies and advances, thereby entitling Tuttle to an entire-controversy-doctrine defense to the later case filed by Faugno on plaintiff's behalf, all some three years before Faugno committed the malpractice for which judgment was entered against him. Finally, Faugno's alleged negligence, and plaintiff's cause of action against Faugno, arose in 1992 when, on behalf of plaintiff, Faugno filed suit against Tuttle, but not Mancinelli, even in the face of Tuttle's third-party contribution complaint against Mancinelli. Against that factual backdrop, it simply cannot be said that Tuttle, Mancinelli and Faugno had common liability *at the time* plaintiff's separate cause of actions accrued. Thus, Faugno fails to satisfy the statutory definition of a joint tortfeasor for contribution purposes. Each of Tuttle's, Mancinelli's and Faugno's alleged malpractice constituted separate torts at disparate times with different damages covering a six-year period. As a result, their separate acts of malpractice cannot constitute the "joint liability" required for the imposition of contribution liability under the JTCL.

A similar result has obtained in other states in which this issue has been addressed. In *Vesely, Otto, Miller & Keefe v. Blake*, 311 *N.W.*2d 3 (Minn.1981), a lawyer who allowed the statute of limitations to expire in a medical malpractice action sought contribution from the now time-barred physician. Rejecting such an attempt, the Supreme Court of Minnesota held that

> there was no common liability at the moment either tort was committed. When [the physician] allegedly treated [the patient/client] in a negligent manner, [the patient/client] could have sued him for damages for personal injuries arising from medical malpractice at that time and throughout the 2–year statute of limitations period. However, the [patient/client] could not have sued [the lawyer] for negligent legal advice during this 2–year period because at this point [the patient/client] had suffered no damage arising from the legal malpractice. The [patient/client's] ability to sue [the lawyer] for damages arose only at the time, and indeed for the very reason, that [the patient/client] could no longer sue [the physician], i.e., at the expiration of the limitations period for the medical malpractice claim.
>
> [*Id.* at 5.]

In the same factual setting, where a patient/client sued his lawyer for failing to file a medical malpractice action within the limita-

tions period, New York refused to allow the lawyer's contribution claim against the time-barred doctors, stating:

> The third party did not contribute to the injuries to the plaintiff caused by the lawyers. The lawyers did not contribute to the injuries allegedly caused by the doctors. Neither is entitled to contribution from the other.
>
> [*Alexander v. Callanen,* 104 *Misc.*2d 762, 429 *N.Y.S.*2d 141, 142 (N.Y.Sup.Ct.1979).]

Also in New York, where a lawyer failed to file timely a personal injury action against a truck driver and his employer, a claim for indemnity against the truck driver and his employer was rejected because

> [a] claim of indemnity is not sufficiently alleged solely on the basis that the claims arose out of the same set of facts. Third-party plaintiff must also allege facts which show that third-party defendant's liability rises from the liability of third-party plaintiff to plaintiff. Here, the wrong committed by third-party defendants is separate, distinct and not related in any way to the wrong committed by third-party plaintiff and, therefore, the third-party complaint was properly dismissed.
>
> [*Cleveland v. Farber,* 46 *A.D.*2d 733, 361 *N.Y.S.*2d 99, 100 (N.Y.App.Div.1974).]

*See also Schladensky v. Ellis,* 442 *Pa.* 471, 275 *A.*2d 663 (1971).

■ This conclusion is also well-grounded in principles of finality and repose, as well as in sound public policy. When, as here, a party has secured a judicial adjudication in that party's favor, society's interest in the finality of judgments and the repose accorded to them militates strongly in favor of barring a subsequent action for contribution. We do not believe that the Legislature, in enacting the JTCL, intended to breathe new life into otherwise barred actions.

## B. *Same Injury.*

■ We are called upon here to first define what the Legislature meant by the term "injury" in the sense that, in order to trigger the provisions of the JTCL, the act of the alleged joint tortfeasors also must have resulted in the "same injury." Our review requires that we first look at the plain meaning of the term "injury" in the context of the JTCL and the objects sought to be achieved.

> When dealing with questions of statutory construction, the Court first considers the plain meaning of the provision at issue. "Such language should be given its

ordinary meaning, absent a legislative intent to the contrary." When a statute is "silent or ambiguous," however, the Court must interpret the statute in light of the Legislature's intent. In order to ascertain legislative intent, the Court may look to extrinsic evidence, including legislative history, committee reports, and contemporaneous construction. "The primary task for the [C]ourt is to 'effectuate the legislative intent in light of the language used and the objects sought to be achieved.' "

[*Burns v. Belafsky,* 166 *N.J.* 466, 473, 766 *A.2d* 1095 (2001) (citations omitted).]

*See also N.J.S.A.* 1:1–1 ("In the construction of the laws and statutes of this state, both civil and criminal, words and phrases shall be read and construed with their context, and shall, unless inconsistent with the manifest intent of the legislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning, according to the approved usage of the language.").

Section 1 of the JTCL informs us that " 'joint tortfeasors' means two or more persons jointly or severally liable in tort for the same injury to person or property, . . . ." *N.J.S.A.* 2A:53A–1. The operative provisions of the JTCL limit recovery to those instances when "injury or damage is suffered by any person as a result of the wrongful act, neglect or default of joint tortfeasors" *and* "the person so suffering injury or damage recovers a money judgment or judgments for such injury or damage . . . ." *N.J.S.A.* 2A:53A–3. The contextual uses of the term "injury" leads us to the conclusion that the Legislature intended that the term "same injury" in its definition of joint tortfeasor relate to the harm the tort victim suffered and not to the cumulative damages the tort victim sustained as a result of multiple disparate injuries caused by multiple tortfeasors. Viewed in this manner, Faugno cannot satisfy the "same injury" requirement for the imposition of contribution liability on a joint tortfeasor.

The harm visited on plaintiff by Tuttle, Mancinelli and Faugno, although sharing a common core, was different in each instance. Tuttle caused harm to plaintiff by reason of Tuttle's failure to deliver and file a purchase money mortgage securing plaintiff's deposit monies and advances; Mancinelli caused harm to plaintiff by failing to name Tuttle in the suit against the Seller; and

Faugno caused harm to plaintiff by failing to include Mancinelli in the suit against Tuttle. In those fundamental respects, the facts here differ from those present in *LaBracio Family P'ship v. 1239 Roosevelt Ave., Inc.*, 340 *N.J.Super.* 155, 773 *A.2d* 1209 (App.Div. 2001), relied on by both Faugno and the Appellate Division in seeking to extend joint tortfeasor contribution liability to Tuttle and Mancinelli. Unlike Faugno, who seeks contribution here from those whose allegedly tortious acts occurred before Faugno's now admitted negligence, the two attorney/claimants in *LaBracio* sought contribution from a successor attorney arising from the failure of all three lawyers in the same transaction to insure that a deed and mortgage were filed timely. *Id.* at 158–59, 773 *A.2d* 1209. Under those circumstances, joint tortfeasor contribution liability was rightly apportioned among all three attorneys who shared joint liability (each for failing to file the deed and mortgage in a timely manner as part of the same real estate transaction) and who all caused the same injury (the untimely filing of the deed and mortgage that resulted in liens with priority filing listed against the realty). *LaBracio, supra*, is factually distinguishable and therefore not relevant to the inquiry here.

## IV.

Like the Appellate Division, we are dismayed by the cottage industry of litigation that was spawned by a rather commonplace real estate transaction that occurred eighteen years ago. By this opinion, we bring this matter to an end today. We, therefore, hold that, under the circumstances of this case, the prior tortfeasors are not liable for statutory contribution to the subsequent tortfeasor because the prior and subsequent tortfeasors were not jointly or severally liable to plaintiff for the same cause of action. We further hold that the subsequent tortfeasor cannot claim statutory contribution from the prior tortfeasor inasmuch as the "injury" inflicted by the prior tortfeasors is not the "same injury" as the one inflicted by the subsequent tortfeasor.

The judgment of the Appellate Division is reversed and the judgment of the trial court is reinstated.

*For reversal and reinstatement*—Chief Justice PORITZ and Justices LONG, LaVECCHIA, ZAZZALI, ALBIN, WALLACE and RIVERA–SOTO—7.

*Opposed*—None.