**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2981-17T1

SOUTH BRUNSWICK
FURNITURE, INC., LINDEN
FURNITURE, INC.,
WOODBRIDGE FURNITURE,
INC., and WILLIAM SCHAFER,

      Plaintiffs,

v.

ACRISURE, LLC, d/b/a
BECKERMAN & COMPANY,

      Defendants,

and

LOUIS BECKERMAN &
COMPANY, INC., d/b/a
BECKERMAN & COMPANY,
LBMCO CORP., d/b/a
BECKERMAN & COMPANY,
and MARK TORIELLO,

      Defendants/Third-Party
      Plaintiffs-Appellants,

v.

WILENTZ, GOLDMAN &
SPITZER, PA, and GOLDSTEIN
AND BACHMAN, PA,

      Third-Party Defendants-
      Respondents.

_____

         Argued January 24, 2019 – Decided March 4, 2020

         Before Judges Fuentes, Vernoia and Moynihan.

         On appeal from the Superior Court of New Jersey, Law
         Division, Middlesex County, Docket No. L-1090-15.

         Kevin M. Eppinger argued the cause for appellants
         (Gold, Albanese, Barletti & Locascio, LLC, attorneys;
         Robert Francis Gold, of counsel and on the briefs;
         Kevin M. Eppinger, on the briefs).

         Richard J. Byrnes argued the cause for pro se
         respondent Wilentz, Goldman & Spitzer, PA.

         Eitan D. Blanc argued the cause for respondents
         Goldstein Bachman, PA (Zarwin Baum DeVito Kaplan
         Schaer Toddy PC, attorneys; Lisa Z. Slotkin, of counsel
         and on the brief; Eitan D. Blanc, on the brief).

The opinion of the court was delivered by

FUENTES, P.J.A.D.

Plaintiffs South Brunswick Furniture, Inc., Linden Furniture, Inc.,

Woodbridge Furniture, Inc., and William Schafer are business entities that sell

furniture to the public. When plaintiffs were named as defendants in a consumer

fraud class action, they privately retained counsel and filed a separate professional malpractice action against their insurance broker. In response, the insurance broker filed a third-party legal malpractice action against the attorneys who represented plaintiffs. The trial court granted the attorneys' motions to dismiss the insurance broker's third-party complaint as a matter of law under Rule 4:6-2(e).

In this appeal, the insurance broker argues the attorneys should have advised plaintiffs they needed to report the consumer fraud lawsuit to their insurance carrier in a timely fashion. Under these circumstances, the insurance broker claims it is entitled to sue the attorneys for contribution under the Joint Tortfeasors Contribution Law, N.J.S.A. 2A:53A-l to -5 (JTCL), and common law indemnification. We disagree and affirm.

I

Defendants/third-party plaintiffs Louis Beckerman & Company, Inc., d/b/a Beckerman & Company, LBMCO Corp., d/b/a Beckerman & Company, and Mark Toriello (Beckerman and/or Toriello) are plaintiffs' "long-time" insurance brokers, who are responsible for determining and obtaining "the proper insurance coverages" for plaintiffs' business operations.

A-2981-17T1

On February 24, 2015, plaintiffs filed a two-count civil complaint against Beckerman alleging professional negligence and breach of contract. Plaintiffs alleged Beckerman failed to timely notify plaintiffs' insurance carrier that issued their Directors & Officers (D&O) policy of the pending claims and liability exposure in the then ongoing consumer fraud suit. Plaintiffs first retained Wilentz, Goldman & Spitzer, PA, (Wilentz firm) to represent them in the consumer action. The Wilentz firm was later substituted by Goldstein and Bachman, PA (Goldstein firm). Neither one of these firms advised plaintiffs to investigate or otherwise determine whether the claims asserted against them in the consumer fraud suit were covered under their D&O policy.

On April 1, 2015, Beckerman filed a responsive pleading to plaintiffs' complaint that included a number of affirmative defenses. Sometime thereafter, Beckerman discharged its original counsel and retained substitute counsel. On December 2, 2016, the trial court granted Beckerman's motion to amend its pleadings to file a third-party complaint against the Wilentz and Goldstein firms. On January 13, 2017, the Wilentz firm filed a motion to dismiss the third-party complaint as a matter of law pursuant to Rule 4:6-2(e). The Goldstein firm filed its own motion to dismiss on January 17, 2017.

A-2981-17T1

After considering the arguments of counsel, the court granted Wilentz's and Goldstein's motions to dismiss Beckerman's third-party complaint on February 3, 2017.  The judge found the law firms did not owe a duty of care to Beckerman.  The judge also concluded Beckerman did not have a legally cognizable basis to assert a third-party claim for indemnification against the law firms.  Finally, the judge held Beckerman could not assert a claim for contribution as joint tortfeasors against the law firms as a third-party plaintiff.  The judge denied Beckerman's motion for reconsideration on March 17, 2017.

Plaintiffs and Beckerman continued to litigate the professional negligence and breach of contract claims.  In a letter dated November 2, 2017, plaintiffs' counsel advised the vicinage's Civil Division Manager that "the direct action between [p]laintiffs and [d]efendants has been settled."  The letter also indicated that Beckerman intended to appeal the court's February 3, 2017 order dismissing its third-party complaint against the law firms.  In an order dated November 2, 2017, the trial court dismissed as "settled" the suit between plaintiffs and Beckerman.

II

We review de novo a trial court's order dismissing a cause of action under Rule 4:6-2(e) to determine whether the allegations in the complaint "suggest[]"

5

a cause of action. See Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989) (quoting Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 192 (1988)). Through this approach, we examine the complaint to ascertain whether the basis of "a cause of action may be gleaned even from an obscure statement of claim." Printing Mart, 116 N.J. at 746 (quoting Di Cristofaro v. Laurel Grove Memorial Park, 43 N.J. Super. 244, 252 (App. Div. 1957)). Guided by this standard of review, we describe the following salient facts.

In 2009, Beckerman recommended plaintiffs obtain a D&O insurance policy from Twin City a/k/a The Hartford (Hartford). The policy at issue here was renewed yearly until November 2013. The policy Hartford sold plaintiffs was a "claims made" policy. Under such a policy, the insured is only covered in the event a claim is made against them. The following section describes what the insured needs to do to secure coverage:

> (A) As a condition precedent to coverage under this Policy, the Insureds shall give the Insurer written notice of any Claim as soon as practicable after a Notice Manager becomes aware of such Claim, but in no event later than sixty (60) calendar days after the termination of the Policy Period, or any Extended Reporting Period as described in Section IX. Such notice shall specify the Coverage Part under which notice is being given.

On January 18, 2012, Christopher Wenger, the lead claimant in the consumer fraud civil action against plaintiffs, alleged violations of the

A-2981-17T1

Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -206, and sought damages, civil penalties, and other relief under the Truth in Consumer Contract, Warranty and Notice Act (TCCWNA), N.J.S.A. 56:12-14 to -18. On June 8, 2012, before the Wilentz firm filed a responsive pleading in this suit, plaintiffs' general manager Michael Citron telephoned Beckerman's agent Mark Toriello to apprise him of this pending litigation. Citron asked Toriello whether any of plaintiffs' insurance policies covered the legal cost of defending against this lawsuit. Toriello told Citron "he did not believe any of [p]laintiffs' insurance policies would cover the Wenger lawsuit, however, Toriello requested Citron to forward any legal documents and/or notices in Citron's possession to Toriello in order for Toriello to file a claim with Hartford under the existing D&O policy."

At 10:08 a.m. later that same day, Toriello sent Citron an email memorializing the request for legal documents he made during the telephone conversation. Toriello told Citron that "[t]he policy was put into effect on 10/6/09 so it appears that the occurrence [of Wenger's lawsuit claims] falls within the policy term." Toriello noted that upon receipt of any legal notice, it was the duty of the insured to inform the insurer of any potential claims. Toriello assured Citron that as Beckerman's agent, he would provide the necessary documentation to Hartford "so that they can evaluate whether there is

coverage should this claim accelerate." Seven minutes later, Will Schafer, the president and owner of plaintiffs' business operations, emailed Toriello and told him: "Mike call me on this before this gets reported." It is undisputed that: (1) Citron did not send Toriello the legal documents he requested; and (2) Toriello did not notify the insurer of the pending Wenger lawsuit.[1]

On July 5, 2012, the Goldstein firm replaced the Wilentz firm as plaintiffs' counsel of record in Wenger's lawsuit. On August 2, 2012, Wenger filed a second amended complaint to convert the lawsuit into a class action. Due to a lack of insurance coverage, plaintiff used business funds to pay the cost of defense and settlement. Against the factual backdrop, we will address the trial court's legal analysis.

## III

The motion judge found, and Beckerman does not dispute, that its representatives were aware of Wenger's lawsuit "as early as June 2012." In this light, we first address Beckerman's claims for indemnification against the two

---

[1] The appellate record contains a copy of a letter sent by Hartford to Citron dated March 1, 2013, in which the carrier recites, in great detail, the history of plaintiffs' awareness of and involvement in Wenger's lawsuit. Hartford ultimately concludes that "there is no coverage under the [p]olicy" for the Wenger lawsuit and Hartford would not provide a defense or indemnity to plaintiffs. The denial of coverage was based on Beckerman's failure to file a timely claim on plaintiffs' behalf.

A-2981-17T1

law firms. In our State, indemnity is available to a party when it is provided by contract or awarded by a court as an equitable remedy. New Milford Bd. of Educ. v. Juliano, 219 N.J. Super. 182, 185 (App. Div. 1987). When awarded by the court, indemnity serves "to prevent a result which is regarded as unjust or unsatisfactory." Ibid. Our Supreme Court addressed this issue sixty years ago:

> The right of indemnity rests upon a difference between the primary and secondary liability of two persons each of whom is made responsible by the law to an injured party. It is a right which enures to a person who, without active fault on his own part, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable. The difference between primary and secondary liability is not based on a difference in degrees of negligence or on any doctrine of comparative negligence. It depends on a difference in the character or kind of wrongs which cause the injury and in the nature of the legal obligation owed by each of the wrongdoers to the injured person.
>
> [T]he important point to be noted in all the cases is that secondary as distinguished from primary liability rests upon a fault that is imputed or constructive only, being based on some legal relation between the parties, or arising from some positive rule of common or statutory law or because of a failure to discover or correct a defect or remedy a dangerous condition caused by the act of the one primarily responsible.
>
> [Adler's Quality Bakery, Inc. v. Gaseteria, Inc., 32 N.J. 55, 80 (1960) (quoting Builders Supply Co. v. McCabe, 366 Pa. 322, 325, 328 (1951)).]

A-2981-17T1

Beckerman argues the two law firms should be held primarily liable for plaintiffs' damages. This argument absolves Beckerman from an insurance broker's primary responsibilities: (1) to ascertain the insured's coverage needs; (2) to procure policies that provide the necessary coverage; and (3) to take the steps necessary to ensure coverage is available when the need arises. The uncontested facts do not support this approach.

Indemnification is premised on a legal relationship between the parties, under which a party who did not contribute to the injury is nevertheless legally responsible to compensate the injured party. Plaintiffs do not claim they were harmed by the law firms that represented them in the underlying case. Here, plaintiffs claimed they were directly harmed by Beckerman's professional negligence, as manifested by Toriello's failure to notify Hartford of the Wenger suit in a timely fashion. The law firms did not represent Beckerman at any time in these proceedings and Beckerman does not allege it relied on plaintiffs' legal relationship with these firms.

## IV

We next address the issue of contribution under the JTCL. The right of contribution among joint tortfeasors is codified as follows:

> Where injury or damage is suffered by any person as a
> result of the wrongful act, neglect or default of joint

A-2981-17T1

tortfeasors, and the person so suffering injury or damage recovers a money judgment or judgments for such injury or damage against one or more of the joint tortfeasors, either in one action or in separate actions, and any one of the joint tortfeasors pays such judgment in whole or in part, he shall be entitled to recover contribution from the other joint tortfeasor or joint tortfeasors for the excess so paid over his pro rata share; but no person shall be entitled to recover contribution under this act from any person entitled to be indemnified by him in respect to the liability for which the contribution is sought.

[N.J.S.A. 2A:53A-3.]

Contribution is available only when the parties meet the definition for joint tortfeasors. Cherry Hill Manor Assocs. v. Faugno, 182 N.J. 64, 72 (2004). Under the JTCL, joint tortfeasors are defined as "two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them." N.J.S.A. 2A:53A-1.

In Cherry Hill Manor, the Supreme Court clarified the applicability of the JTCL to attorney malpractice claims. 182 N.J. at 70. There, the plaintiff sued its former attorney, Faugno, for legal malpractice. Id. at 69. The defendant-attorney filed a third-party complaint against the plaintiff's prior attorneys seeking indemnification and contribution under the JTCL. Id. at 69-71. The previous attorneys moved to dismiss the third-party action as a matter of law, arguing they could not be held liable for contribution because they did not meet

11

the definition of joint tortfeasors under the JTCL. Id. at 69. The trial court agreed and granted the prior attorneys' motions for summary judgment. Ibid.

When the underlying litigation between Cherry Hill and Faugno settled, Faugno sought to resurrect his indemnification and contribution claims. Cherry Hill Manor, 182 N.J. at 70-71. On appeal, this court reversed the trial court and held that "as a matter of law, Faugno should be permitted to pursue his contribution and indemnity claims under the Joint Tortfeasors Contribution Law [against the former attorneys]." Ibid. The Supreme Court reversed this court's ruling and reinstated the trial court's order granting summary judgment. Id. at 77. The Court found the JTCL was not applicable because there was no joint liability between the parties and the injuries caused by the prior attorneys were not the same as the injury caused by Faugno. Id. at 75-76.

The Court's holding in Cherry Hill Manor applies with equal force here. Beckerman argues it and the law firms are jointly liable to plaintiffs because they were both responsible to report the Wenger lawsuit to Hartford. This argument is unavailing. Although Beckerman and the law firms may share some responsibility for the failure to report the insurance claim, this does not answer the question of whether there is joint liability under the JTCL. As the Court noted in Cherry Hill Manor, "joint, common or concurrent negligence" does not

12

provide for joint liability under the JTCL. Id. at 72. There must be common liability when the plaintiff's cause of action accrues. Ibid.

Here, plaintiffs retained the Wilentz firm between January 18, 2012 and April 20, 2012. The Wilentz firm's ostensible negligent failure to advise plaintiffs to report the Wenger lawsuit to Hartford arose during that time period. Beckerman's negligence occurred on or after June 8, 2012, when Toriello failed to file a claim with Hartford, putting the insurer on notice of the existence of the Wenger lawsuit, as required by plaintiffs' D&O policy. The Goldstein firm did not substitute the Wilentz firm as attorney of record until July 5, 2012. The basis for the malpractice action, the failure to advise plaintiffs of the need to report the Wenger lawsuit to Hartford, arose after that date.

These uncontested facts do not show common liability among the parties when plaintiffs' cause of action accrued. Each alleged negligent act was distinct and occurred at separate times. The same factors that precluded Faugno from satisfying the standard for joint liability in Cherry Hill Manor preclude Beckerman from satisfying the standard for joint liability in this case. 182 N.J. at 73.

Beckerman's remaining arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

A-2981-17T1

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2981-17T1