SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

### Rosalyn Musker v. Suuchi, Inc. (A-8-24) (089665)

**Argued February 3, 2025 -- Decided March 17, 2025**

**FASCIALE, J., writing for a unanimous Court.**

The Court considers whether "commissions" are considered "wages" under the Wage Payment Law (WPL) and are therefore subject to the WPL's protections.

Plaintiff Rosalyn Musker worked in sales for defendant Suuchi, Inc. (Suuchi), which sells software subscriptions to apparel manufacturers. In addition to her base salary, Musker was eligible for commissions under Suuchi's Sales Commission Plan (SCP). In March 2020, in response to the COVID-19 pandemic, Suuchi decided to sell Personal Protective Equipment (PPE), also on a commission basis, as memorialized in emails to the sales team. Musker generated approximately $34,448,900 in gross revenue by selling PPE. The parties disputed whether the 4% commission she was entitled to for those sales was of gross or net revenue. The parties also disagreed about whether Musker's PPE commissions are "wages" or are excluded from the WPL as "supplementary incentives" under N.J.S.A. 34:11-4.1(c).

Musker filed a complaint alleging that Suuchi violated the WPL by withholding her "wages." The trial judge dismissed the WPL claims, holding that Musker's PPE commissions were not "wages" under the WPL. The Appellate Division affirmed. 479 N.J. Super. 38, 64 (App. Div. 2024). The Court granted leave to appeal. 258 N.J. 470 (2024).

**HELD:** The WPL defines "wages" as "direct monetary compensation for labor or services rendered by an employee, where the amount is determined on a time, task, piece, or <u>commission</u> basis." N.J.S.A. 34:11-4.1(c) (emphasis added). Under that definition, compensating an employee by paying a "commission" for "labor or services" always constitutes a wage under the WPL. Therefore, a "commission" under the WPL cannot be excluded from the definition of "wages" as a "supplementary incentive."

1. If an employer violates the WPL by withholding an employee's wages, an employee may seek damages in a private cause of action. To constitute a "wage" under the WPL, there first must be "direct monetary compensation for labor or

1

services rendered by an employee." N.J.S.A. 34:11-4.1(c). Second, an employee's "direct monetary compensation" can be "determined on a time, task, piece, or commission basis." Ibid. Pursuant to the ordinary definition of the word, a "commission" directly compensates an employee for performing a service, and so commissions always meet the definition of "wages" under N.J.S.A. 34:11-4.1(c). Third, excluded from N.J.S.A. 34:11-4.1(c)'s definition of "wages" are "supplementary incentives . . . which are calculated independently of regular wages and paid in addition thereto." Applying the ordinary definitions of the terms, a "supplementary incentive" is compensation that motivates employees to do something above and beyond their "labor or services." A "commission" earned "for labor or services rendered by an employee" can thus never be a "supplementary incentive." Moreover, it would be illogical and contrary to the canons of statutory interpretation to read the statute's reference to "supplementary incentives" to include "commissions." (pp. 9-14)

2. Selling PPE required Musker to render "labor or services" as an employee of Suuchi, and it is undisputed that Musker's compensation for PPE sales was determined on a commission basis. Those PPE commissions, which she earned solely because she performed "labor or services," are therefore "wages" under N.J.S.A. 34:11-4.1(c). Just because a product is new and potentially sold only temporarily does not mean that sales of that product somehow fall outside the regular "labor or services" an employee provides. Here, selling PPE became part of Musker's job, and her compensation for performing that task remained a "wage" within the meaning of the WPL. Whether PPE compensation is governed by the SCP or the March 2020 emails regarding the sales of PPE, and whether the PPE commissions are based on gross or net revenue, is not relevant to the determination that the commissions are wages. Finally, the Court explains that receiving a base salary does not turn "commissions" into "supplementary incentives" under the WPL. (pp. 14-17)

     **REVERSED and REMANDED for further proceedings.**

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON, PIERRE-LOUIS, WAINER APTER, NORIEGA, and HOFFMAN join in JUSTICE FASCIALE's opinion.**

2

SUPREME COURT OF NEW JERSEY
A-8 September Term 2024
089665

Rosalyn Musker,

Plaintiff-Appellant,

v.

Suuchi, Inc., Suuchi Ramesh,
and Mark Herman, individually,

Defendants-Respondents,

and

Ben Zucker, individually,

Defendant.

On appeal from the Superior Court,
Appellate Division, whose opinion is reported at
479 N.J. Super. 38 (App. Div. 2024).

| Argued | Decided |
|---|---|
| February 3, 2025 | March 17, 2025 |

Bruce L. Atkins argued the cause for appellant (Deutsch
Atkins & Kleinfeldt, attorneys; Bruce L. Atkins, of
counsel and on the brief, and Diane E. Peyser, on the
brief).

Richard A. Grodeck argued the cause for respondents
(Piro Zinna Cifelli Paris & Genitempo, attorneys;
Richard A. Grodeck, of counsel and on the brief).

1

Daniel Resler, Deputy Attorney General, argued the cause for amicus curiae New Jersey Department of Labor and Workforce Development (Matthew J. Platkin, Attorney General, attorney; Donna Arons, Assistant Attorney General, of counsel, Mayur P. Saxena, Assistant Attorney General, of counsel and on the brief, and Daniel Resler, on the brief).

Alan H. Schorr argued the cause for amicus curiae National Employment Lawyers Association of New Jersey (Schorr & Associates, attorneys; Alan H. Schorr, of counsel and on the brief).

Jonathan Romberg submitted a brief on behalf of amicus curiae Seton Hall University School of Law Center for Social Justice (Seton Hall University School of Law Center for Social Justice, attorneys; Jonathan Romberg, of counsel and on the brief).

JUSTICE FASCIALE delivered the opinion of the Court.

In this appeal, the legal question is whether "commissions" are considered "wages" under the Wage Payment Law (WPL), N.J.S.A. 34:11-4.1 to -4.15, and are therefore subject to the WPL's protections.

We hold that "commissions" are "wages" under the WPL. The WPL defines "wages" as "direct monetary compensation for labor or services rendered by an employee, where the amount is determined on a time, task, piece, or commission basis." N.J.S.A. 34:11-4.1(c) (emphasis added). Under that definition, compensating an employee by paying a "commission" for "labor or services" always constitutes a wage under the WPL. Therefore,

2

contrary to the appellate court's conclusion, a "commission" under the WPL cannot be excluded from the definition of "wages" as a "supplementary incentive."

We reverse the Appellate Division's judgment, vacate the trial judge's order dismissing plaintiff Rosalyn Musker's WPL claims, and remand for further proceedings.

I.

Defendant Suuchi, Inc. (Suuchi) is a company that sells a software-driven platform. In January 2020, Suuchi generated annual recurring revenue (ARR) by selling software subscription packages to apparel manufacturers. At that time, Suuchi hired Musker to perform non-sales administrative work, with an annual salary of $80,000. In February 2020, Musker transitioned to a sales role. In addition to her base salary, she became eligible for commissions under Suuchi's Sales Commission Plan (SCP).

The SCP incentivized sales. Under the SCP, commissions were based on ARR, paid in installments, and subject to the amount sold. Employees earned 1.75% in commissions on the first $729,167 of sales and could potentially earn up to 4% if they achieved certain sales benchmarks beyond that amount. The SCP was "intended to cover all sales situations." But Suuchi had the right to amend the SCP "when a new . . . product or service offering is defined."

3

In March 2020, in response to the COVID-19 pandemic, Suuchi decided to sell Personal Protective Equipment (PPE), also on a commission basis. That month, defendant Mark Herman, Suuchi's Chief Financial Officer, conducted a virtual meeting with the sales team and explained the payment structure for selling PPE. Herman then emailed the team and memorialized those terms. In his email, he stated:

> As we discussed today in our update meeting for all PPE deals we will be recording these deals on a net basis as opposed to gross which we have done historically on our [platform-as-a-service] deals. This is being done as the nature of our services are different and accordingly our markup for our services is our revenue. For example, if the order value is $500,000 and our cost is $400,000 then our markup or our fee for services provided would be $100,000. Sales commission will be calculated using our revenue which in this example would be $100,000 times the respective tier rate per your commission agreement. Commission payments for PPE orders will be based on cash receipts and will be made the month after the month the cash is received. Using the previous example, assuming the deal signs tomorrow and cash is received Friday then the commission payment would be made the second payroll of April.
>
> These deals are a great way to max out on your commission rates. Once you max out your commission tiers, the commission is $40,000 for every $1 million of revenue to the company.

Suuchi's Chief Executive Officer, defendant Suuchi Ramesh, replied to that email and added:

4

We are providing same commissions on these one time orders and not penalizing for not being ARR. For now, lets max out on cash you can each make. Commitment, perseverance, gumption and hustle shall be rewarded[.]

Musker sold PPE to the State of New York and the Township of North Bergen and generated approximately $34,448,900 in gross revenue. The parties disputed the amount she was due in commissions for her PPE sales. Musker contended she was entitled to 4% of gross sales, or $1,377,956. Suuchi agreed her compensation for the PPE sales was determined on a commission basis but at 4% of net revenue, or approximately $476,250.[1] The parties also disagreed about whether Musker's PPE commissions were "wages" or were excluded from the WPL as "supplementary incentives" as those terms are utilized in N.J.S.A. 34:11-4.1(c).

Musker filed a complaint alleging that Suuchi violated the WPL by withholding her "wages."[2] The parties then filed cross-motions for summary judgment. The trial judge dismissed the WPL claims because, in her view, Musker's PPE commissions were not "wages" under the WPL. The judge

---

[1] At oral argument, Suuchi's counsel stated that Suuchi offered to "throw in" approximately $50,000 to get Musker to "an even $525,000."

[2] Musker included other counts in her complaint, including that she was entitled to damages under a breach of contract claim. Those causes of action are not part of this appeal.

found those commissions were excluded under the WPL as "supplementary incentives," and that Musker "is already entitled" to a salary. She reasoned that the PPE "commissions are designed to motivate and incentivize [Musker] to go above and beyond her sales performance, and the [PPE] commissions are calculated independently of her regular wage."

Musker appealed, and the Appellate Division affirmed the dismissal of her WPL claims. Musker v. Suuchi, Inc., 479 N.J. Super. 38, 64 (App. Div. 2024). The Appellate Division stressed that "[i]n many, perhaps most, instances a promised commission will qualify as 'wages' under the [WPL] and not comprise a supplementary incentive." Ibid. However, the appellate court "concur[red] with the trial [judge's] determination that the commissions claimed by [Musker] on PPE sales were not 'wages' under the [WPL] but instead were 'supplementary incentives'" and therefore excluded from the WPL. Id. at 63.

We granted leave to appeal. 258 N.J. 470 (2024). We then granted motions to appear as amici curiae filed by the National Employment Lawyers Association of New Jersey (NELA), the New Jersey Department of Labor and Workforce Development (DOL), and Seton Hall University School of Law Center for Social Justice (CSJ).

6

## II.

Musker argues that the Appellate Division misinterpreted N.J.S.A. 34:11-4.1(c) by erroneously concluding her PPE commissions were "supplementary incentives" and not "wages." She contends that Suuchi determined that her "direct monetary compensation for labor or services" for PPE sales was on a commission basis and that those commissions are therefore "wages" under the WPL.

Suuchi acknowledges that compensation for Musker's PPE sales was determined on a commission basis, above her base salary. But it argues that those commissions are not "wages" under the WPL and generally agrees with the appellate court's conclusion that Musker's compensation for PPE sales was excluded under the WPL's definition of "wages" as "supplementary incentives." Suuchi maintains that PPE was not its core product and contends it devised the PPE sales structure to incentivize sales efforts.

The DOL argues that under the WPL, "wages" consist of monetary compensation for labor or services that an employee renders, "whether on a commission basis or otherwise." It contends that "wages are fundamentally distinct from 'supplementary incentives.'" The DOL and NELA assert that a commission cannot be a supplementary incentive because under the WPL, commissions compensate employees for labor or services rendered -- not

7

above and beyond such labor or services, as is the case for "supplementary incentives."

The CSJ's position is closely aligned with that of Musker, NELA, and the DOL. It argues primarily that under the WPL, commissions are regular "wages" earned by employees for performing their job, which are conceptually distinct from "supplementary incentives." The CSJ contends, like the DOL and NELA, that "commissions are always wages covered by the [WPL] and are never excluded as supplementary incentives." The CSJ emphasizes that a "supplementary incentive" is entirely separate from and paid in addition to "wages."

## III.

We review questions of statutory interpretation de novo. Wiggins v. Hackensack Meridian Health, 259 N.J. 562, 574 (2025). To do so, "we look to the Legislature's intent as expressed in the statute's plain terms." Ibid. "There is no more persuasive evidence of legislative intent than the words by which the Legislature undertook to express its purpose . . . ." Fuster v. Township of Chatham, 259 N.J. 533, 547 (2025) (omission in original) (quoting Perez v. Zagami, LLC, 218 N.J. 202, 209-10 (2014)). "We ascribe to the statutory words their ordinary meaning and significance and read them in context with related provisions so as to give sense to the legislation as a whole."

8

DiProspero v. Penn, 183 N.J. 477, 492 (2005) (citations omitted); see also N.J.S.A. 1:1-1 (stating that statutory "words and phrases shall be read" in context "and shall, unless inconsistent with the manifest intent of the legislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning, according to the approved usage of the language").  "If the plain language of a statute is clear, our task is complete." Savage v. Township of Neptune, 257 N.J. 204, 215 (2024).  "[I]f there is ambiguity in the statutory language that leads to more than one plausible interpretation, we may turn to extrinsic evidence, 'including legislative history, committee reports, and contemporaneous construction.'"  DiProspero, 183 N.J. at 492-93 (quoting Cherry Hill Manor Assocs. v. Faugno, 182 N.J. 64, 75 (2004)).

## IV.

"Originally enacted in 1965, the WPL 'governs the time and mode of payment of wages due to employees,' and is a remedial statute to be construed liberally."  Maia v. IEW Constr. Grp., 257 N.J. 330, 344 (2024) (quoting Hargrove v. Sleepy's, LLC, 220 N.J. 289, 302-03 (2015)).  Under N.J.S.A. 34:11-4.4, and subject to exceptions that do not apply here, "[n]o employer may withhold . . . an employee's wages."  If an employer violates the WPL, an

9

employee may seek damages in a private cause of action.  Maia, 257 N.J. at 344; see also N.J.S.A. 34:11-4.7.

To resolve the narrow legal question presented in this appeal of whether Musker's PPE commissions are considered "wages" under the WPL, we address whether the statute excludes her "commissions" as "supplementary incentives."  Our focus is on the definition of "wages" in the WPL.  N.J.S.A. 34:11-4.1(c) defines "wages" as

> the direct monetary compensation for labor or services rendered by an employee, where the amount is determined on a time, task, piece, or commission basis excluding any form of supplementary incentives and bonuses[3] which are calculated independently of regular wages and paid in addition thereto.
>
> [(emphases added).]

The plain text of that definition is clear and unambiguous.

First, to constitute a "wage" under N.J.S.A. 34:11-4.1(c), there must be "direct monetary compensation for labor or services rendered by an employee."  Ibid.  Thus, compensation is tied directly to "labor or services" performed by an employee.  The WPL does not define those terms.  We therefore ascribe "their ordinary meaning and significance and read them in

---

[3]  Neither the parties, the trial judge, nor the appellate court concluded that Musker's PPE commissions were excluded under the WPL as "bonuses."  We therefore need not address "bonuses" under N.J.S.A. 34:11-4.1(c).

10

context . . . to give sense to the" WPL's definition of "wages." DiProspero, 183 N.J. at 492 (citation omitted). "Labor" means "[w]ork of any type, including mental exertion; physical or mental exertion to achieve some useful or desired purpose, esp[ecially] for gain." Black's Law Dictionary 1043 (12th ed. 2024). "Service" means "[t]he official work or duty that one is required to perform." Id. at 1648. Those unambiguous definitions give context to the requirement that the "direct monetary compensation" must be for work that an employee is required to perform.

Second, under N.J.S.A. 34:11-4.1(c), an employee's "direct monetary compensation" can be "determined on a time, task, piece, or commission basis." A "commission," which the WPL does not define, means "a fee paid to an agent or employee for transacting a piece of business or performing a service; esp[ecially]: a percentage of the money received from a total paid to the agent responsible for the business." Merriam-Webster's Collegiate Dictionary 249 (11th ed. 2020). Thus, because a commission directly compensates an employee for performing a service, it always meets the definition of "wages" under N.J.S.A. 34:11-4.1(c) as "direct monetary compensation" for "labor or services" rendered by an employee.

Third, excluded from N.J.S.A. 34:11-4.1(c)'s definition of "wages" are "supplementary incentives . . . which are calculated independently of regular

11

wages and paid in addition thereto." The WPL does not define the terms "supplementary" and "incentives," so we look to their ordinary meanings. "Supplementary" generally means "added to something else" or "in addition to something else." Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/supplementary (last visited Mar. 10, 2025). "Incentive" generally means "something, especially money, that encourages a person or organization to do something." Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/incentive (last visited Mar. 10, 2025). Putting the two terms together, a "supplementary incentive" is compensation that motivates employees to do something above and beyond their "labor or services." Thus, under N.J.S.A. 34:11-4.1(c), a "supplementary incentive" is not payment for "labor or services," and a "commission" earned "for labor or services rendered by an employee" can never be a "supplementary incentive."

All monetary compensation arguably motivates, encourages, and incentivizes employees. That is a simple matter of common sense. But the primary question addressing whether compensation is a "supplementary incentive" is not whether the compensation only has the capacity to do those things, but rather whether the compensation incentivizes employees to do something beyond their "labor or services." If that is the case, then the compensation is a "supplementary incentive" and is excluded from the

12

definition of "wages" under N.J.S.A. 34:11-4.1(c). In other words, just because compensation has the capacity to incentivize does not mean it is automatically excluded from being a wage as a "supplementary incentive" under the WPL.

As the DOL and NELA explain, some examples of "supplementary incentives" may include payment for sharing office space with another employee, working out of a particular office location, achieving perfect attendance, referring a friend to apply for an open position, or participating in an office costume contest. In those examples, the added compensation is for doing something that is beyond the employee's "labor or services." Therefore, "supplementary incentives" under the WPL are distinct from "commissions," which provide monetary compensation for "labor or services" rendered by an employee.[4]

The WPL is unambiguous. Even if it was not, applying well-known canons of statutory construction also demonstrates that "commissions" and "supplementary incentives" must mean different things. For example, "[i]t is an elementary rule of construction that effect must be given, if possible, to

---

[4] Because we conclude that "commissions" and "supplementary incentives" are different from each other and that "commissions" are "wages" under the WPL, we need not address whether Musker's PPE commissions are "calculated independently of regular wages and paid in addition thereto." Her PPE commissions are "wages" under the WPL.

13

every word, clause and sentence of a statute." Norman J. Singer & Shambie Singer, 2A <u>Sutherland Statutory Construction</u> § 46:6 at 238 (7th ed. 2024) (citing <u>United States v. Menasche</u>, 348 U.S. 528 (1955)). Notably, "[d]ifferent words used in the same, or a similar, statute are assigned different meanings whenever possible." <u>Id.</u> at 261. That is the case here. If "supplementary incentives" included certain "commissions" in its meaning, then instead of N.J.S.A. 34:11-4.1(c) saying "[w]ages means the direct monetary compensation for labor or services rendered by an employee, where the amount is determined on a . . . commission basis excluding any form of supplementary incentives," it would otherwise read "[w]ages means the direct monetary compensation for labor or services rendered by an employee, where the amount is <u>determined on a . . . commission basis excluding any form of supplementary commissions</u>." That reading would be illogical and contrary to applicable canons of statutory interpretation.

V.

Application of those legal principles to the facts of this case is straightforward.

Selling PPE required Musker to render "labor or services" as an employee of Suuchi. It is undisputed that Musker's compensation for PPE sales was determined on a commission basis. Suuchi acknowledged that the

14

promised earnings were directly tied to those sales. Those PPE commissions, which she earned solely because she performed "labor or services," are therefore "wages" under N.J.S.A. 34:11-4.1(c).

We disagree with any suggestion that because PPE was a new product and not the primary business of Suuchi, Musker's "commissions" were therefore "supplementary incentives." Suuchi branched out during the pandemic and entered the PPE market. That was a business decision that generated millions of dollars in revenue for the company. But just because a product is new and potentially sold only temporarily does not mean that sales of that product somehow fall outside the regular "labor or services" an employee provides. Here, selling PPE became part of Musker's job, and her compensation for performing that task remained a "wage" within the meaning of the WPL.

The fact that the parties dispute whether the SCP, the March 2020 emails, or both, govern Musker's compensation for PPE sales is of no moment to the legal question presented.[5] No matter which commission structure is employed by the parties, the undisputed fact is that the more labor or services

---

[5] Interpreting the SCP and the March 2020 emails, the trial judge found that Musker was entitled to PPE "commissions" on her breach of contract claim utilizing 4% of the net sales. That ruling is not before us.

15

Musker rendered to sell PPE, the more commissions she earned. Whether there are differences between the commission structure contemplated under the SCP and the plan announced in March 2020 does not change our analysis, and whether Musker's PPE commissions were on gross sales or net sales is irrelevant to the definition of "wages" under the WPL. For purposes of N.J.S.A. 34:11-4.1(c), the only question is whether Musker's commissions for selling PPE are wages. And they are.

We also disagree with the notion that receiving a base salary turns "commissions" into "supplementary incentives" under the WPL. If that was the case, sales commissions earned by an employee would cease to be "wages" under the WPL if the salesperson also received a salary. Payment determined on a commission basis, for "labor or services," is no less a "wage" under the WPL than a salary determined on a time basis. And N.J.S.A. 34:11-4.1(c) does not expressly preclude an employee who has a base salary from also earning wages separately on a commission basis.[6] Musker's PPE commissions were for her "labor or services." Those commissions -- or any commissions

---

[6] Suuchi's counsel acknowledged as much at oral argument when he pointed out that Musker had a base salary and earned "wages" by selling software subscriptions under the SCP through the commissions she earned on those sales.

16

earned by employees for labor or services rendered -- cannot be "supplementary incentives" under the WPL.

## VI.

The judgment of the Appellate Division upholding the order dismissing Musker's WPL claims is reversed. We remand for further proceedings in the trial court consistent with this opinion.

CHIEF JUSTICE RABNER and JUSTICES PATTERSON, PIERRE-LOUIS, WAINER APTER, NORIEGA, and HOFFMAN join in JUSTICE FASCIALE's opinion.