NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0468-17T3

JASON DEVER,

       Plaintiff-Appellant,

v.

DEBRA HOWELL, a/k/a
DEBRA A. HOWELL,

       Defendant-Respondent.

_____

APPROVED FOR PUBLICATION

September 20, 2018

APPELLATE DIVISION

Submitted September 12, 2018 – Decided  September 20, 2018

Before Judges Messano, Fasciale and
Gooden Brown.

On appeal from Superior Court of New Jersey,
Chancery Division, Family Part, Cape May County,
Docket No. FD-05-0386-11.

Richard A. Renza, Jr., attorney for appellant.

Anthony J. Harvatt II, attorney for respondent.

The opinion of the court was delivered by

FASCIALE, J.A.D.

Plaintiff appeals from an August 15, 2017 order entered after a bench trial requiring that he return the parties' children to New Jersey from South

Carolina. Judge James H. Pickering, Jr. conducted the trial, entered the order, and rendered a sixty-six page written decision. He concluded that plaintiff unlawfully removed the children from New Jersey without first complying with N.J.S.A. 9:2-2.

Plaintiff gave defendant less than one day's notice about the move, and although defendant objected, plaintiff moved to South Carolina without first obtaining an order permitting the relocation. Defendant filed an order to show cause (OTSC) seeking custody and the return of the children to New Jersey. The judge found plaintiff knew the statute required that he obtain an order permitting the removal before relocating to South Carolina, but he removed the children anyway, because he feared the court might grant defendant's pending motion for overnight visits with the children. After losing the trial, plaintiff sought reconsideration of the order under review, and for the first time, requested a best interests analysis.

We hold – because defendant had objected to the South Carolina move – that N.J.S.A. 9:2-2 required plaintiff to first obtain an order permitting the removal of the children from this jurisdiction before the actual relocation. The time for the judge to determine whether plaintiff had established "cause" for the removal of the children would have been before the relocation occurred. Requiring the judge to analyze whether "cause" existed after the relocation

2

ignores the unambiguous plain text of the statute, plaintiff's ultimate burden of proof to demonstrate "cause" before the move occurs, and the important Legislative purpose for requiring a showing of cause – that is, to preserve the rights of a noncustodial parent to maintain and develop her familial relationship.

We therefore affirm. Our affirmance is without prejudice, however, to plaintiff seeking an appropriate order under N.J.S.A. 9:2-2 should he decide to do so.

I.

The parties were never married. They had two children together, born in 2007 and 2009. In approximately 2011, they agreed to joint physical custody of the children, and for eighteen months, they shared parenting time. In October 2013, plaintiff became the parent of primary residence. At all relevant times, they shared legal custody.

Initially, plaintiff developed an interest in relocating with the children to Florida. On May 1, 2015, the parties entered into a limited consent order (the May 2015 order) permitting plaintiff to relocate with the children from New Jersey to Florida. The May 2015 order – which mentioned Florida seven times and omits any reference to South Carolina – contemplated defendant's

parenting time before and after the expected move to Florida. Plaintiff never relocated to Florida.

In November 2015, while the children remained in New Jersey, defendant filed a motion seeking overnight parenting time with the children. The motion had been initially returnable in February 2016, but the parties asked the judge to adjourn that date so they could negotiate. The judge carried the return date to March 2016, but plaintiff requested the judge relist argument for April 7, 2016.

While the motion was pending, at 8:37 p.m. on Sunday, April 3, 2016, plaintiff told defendant he and the children would be moving to South Carolina the next day, and he offered her ten minutes in the morning to say goodbye. Although defendant adamantly objected, plaintiff relocated with the children to South Carolina on the morning of April 4, 2016, without obtaining an order permitting the move.

On the April 7 return date, a motion judge (the motion judge) – not the judge who entered the order under review – conducted oral argument on defendant's motion for overnight parenting time. The motion judge learned for the first time that plaintiff had taken the children to South Carolina three days earlier, and informed plaintiff's counsel that the May 2015 order did not authorize the move to South Carolina. In response, plaintiff's counsel

A-0468-17T3

presented a proposed consent order, signed only by plaintiff, the purpose of which was to permit the move, albeit after the fact. Defendant repeated her strong objection and refused to sign the proposed order.

Also on the April 7 return date, the motion judge, as an interim measure to deal with the new information she had just learned, temporarily allowed the children to remain in South Carolina "until further order" of the court. As part of that order, she did not perform – nor was she asked to do so – a best interests analysis or otherwise determine, in accordance with N.J.S.A. 9:2-2, whether "cause" existed for plaintiff to remove the children from New Jersey. The motion judge made no findings of fact or conclusions of law as to plaintiff's decision to relocate to South Carolina. Importantly, the motion judge stated that she allowed the removal only on a temporary basis and that the relocation "procedurally may have been defective."

The children remained in South Carolina for approximately two months. In June, plaintiff and the children returned to New Jersey, but again on July 28, 2016 – without obtaining defendant's consent or a court order – plaintiff returned to South Carolina with the children. Defendant then retained counsel to petition the court for relief.

In September 2016, defendant filed her OTSC. With counsel's assistance, defendant requested the court do two things: (1) require plaintiff

return the children to New Jersey, and (2) award her sole custody. By this time, she did not know where in South Carolina the children resided, or have any other basic information about the children.

On the initial return of the OTSC, the judge ordered electronic communication between defendant and the children. The judge confirmed plaintiff's address in South Carolina and established parenting time for defendant. The judge then tried the case on five days between February and May 2017. Thereafter, Judge Pickering made numerous findings of fact and conclusions of law as to the unlawful removal and defendant's request for custody.

As to the relocation, the judge concluded that plaintiff violated N.J.S.A. 9:2-2. The judge found plaintiff moved out of State without defendant's consent, knowing that the May 2015 order applied only to Florida. The judge found that the proposed order, the one only plaintiff signed and presented to the motion judge, added additional proof that plaintiff understood that the May 2015 order did not authorize the move to South Carolina. After assessing credibility issues, he found that plaintiff intentionally left New Jersey on April 4, knowing it was illegal. The judge entered a parenting plan, and then directed plaintiff to consult with defendant about all "issues to which [defendant] is entitled to have input [on] as a joint custodian," such as where in

New Jersey the children would reside. The order required the children be returned within ten days.

The judge then denied defendant's request to modify the custody arrangement after applying the governing case law and factors listed in N.J.S.A. 9:2-4(c).[1] The judge used these factors solely for his custody analysis. Although the factors are relevant for determining whether "cause" exists under N.J.S.A. 9:2-2, a judge undertaking such an evaluation may

---

[1] N.J.S.A. 9:2-4(c) provides factors a court must consider when awarding custody and states in part:

> [T]he court shall consider but not be limited to the following factors: the parents' ability to agree, communicate and cooperate in matters relating to the child; the parents' willingness to accept custody and any history of unwillingness to allow parenting time not based on substantiated abuse; the interaction and relationship of the child with its parents and siblings; the history of domestic violence, if any; the safety of the child and the safety of either parent from physical abuse by the other parent; the preference of the child when of sufficient age and capacity to reason so as to form an intelligent decision; the needs of the child; the stability of the home environment offered; the quality and continuity of the child's education; the fitness of the parents; the geographical proximity of the parents' homes; the extent and quality of the time spent with the child prior to or subsequent to the separation; the parents' employment responsibilities; and the age and number of the children. A parent shall not be deemed unfit unless the parents' conduct has a substantial adverse effect on the child.

A-0468-17T3

supplement the "cause" analysis by considering other factors as appropriate. Bisbing v. Bisbing, 230 N.J. 309, 338 (2017). The judge considered the N.J.S.A. 9:2-4(c) factors using the evidence relevant to custody. Plaintiff never asked the judge – before the move, during the trial, or before the August 17, 2017 order – to determine whether he had "cause" to relocate to South Carolina. Thus, the failure to do so deprived the judge from supplementing his findings and conclusions regarding the N.J.S.A. 9:2-4(c) factors.

Plaintiff then moved for reconsideration of the August 17, 2017 order requiring that he return the children to New Jersey. As part of his motion, plaintiff requested – for the first time – that the judge perform a best interests of the child analysis. Up until this point, plaintiff had never requested such an analysis, be it one guided by Baures or Bisbing.[2] Plaintiff did not ask the judge on reconsideration to evaluate whether he had "cause" to remove the

---

[2] Up to the end of trial testimony, Baures v. Lewis, 167 N.J. 91 (2001), was the controlling law. The Court decided Bisbing between the end of the trial and issuance of the August 17, 2017 order. "Under Baures, a parent with primary custody seeking to relocate children out of state over the objection of the other parent must demonstrate only that there is a good-faith reason for an interstate move and that the relocation 'will not be inimical to the child's interests.'" Bisbing, 230 N.J. at 312 (quoting Baures, 167 N.J. at 118). Bisbing required courts to "conduct a best interests analysis to determine 'cause' under N.J.S.A. 9:2-2 in all contested relocation disputes in which the parents share legal custody – whether the custody arrangement designates a parent of primary residence and a parent of alternate residence, or provides for equally shared custody." Id. at 335.

children to South Carolina. It was too late for that. Instead, plaintiff contended that before the judge ordered him to return the children to New Jersey, defendant had the burden to show it would be in the best interests of the children to do so. Judge Pickering rejected plaintiff's burden-shifting argument and denied reconsideration rendering a twenty-page written decision.

## II.

On appeal, plaintiff argues that the May 2015 order authorized the move to South Carolina. He contends that even if that was not the case, then the motion judge's temporary order permitting the children to remain in South Carolina satisfied the requirements of N.J.S.A. 9:2-2. Plaintiff asserts that the language of this statute does not require he first obtain an order permitting the relocation before the actual move. The premise of his argument is that a parent could remove his children from this State – without the other parent's consent or a court order – and then after the move, make the other parent demonstrate on her motion to return the children to New Jersey that it would be in their best interests to do so.

## A.

We begin by interpreting N.J.S.A. 9:2-2. Our standard of review is well settled. "In matters of statutory interpretation, our review is de novo." Verry v. Franklin Fire Dist. No. 1, 230 N.J. 285, 294 (2017). "The Legislature's

intent is the paramount goal when interpreting a statute and, generally, the best indicator of that intent is the statutory language." DiProspero v. Penn, 183 N.J. 477, 492 (2005). A court should "ascribe to the statutory words their ordinary meaning and significance, and read them in context with related provisions so as to give sense to the legislation as a whole." Ibid. (citations omitted). "[I]f there is ambiguity in the statutory language that leads to more than one plausible interpretation, we may turn to extrinsic evidence, 'including legislative history, committee reports, and contemporaneous construction.'" Id. at 492-93 (quoting Cherry Hill Manor Assocs. v. Faugno, 182 N.J. 64, 75 (2004)).

N.J.S.A. 9:2-2 governs plaintiff's removal of the children from New Jersey. In relevant part, the statute "requires a showing of 'cause' before a court will authorize the . . . removal of a child to another state without the consent of both parents . . . ." Bisbing, 230 N.J. at 323 (emphasis added). Plaintiff's counsel wrote in his merits brief, "[n]othing in the statute requires that an order allowing relocation must precede the actual move." Such an assertion is contrary to the plain and unambiguous text of N.J.S.A. 9:2-2, which states:

> When the Superior Court has jurisdiction over the custody and maintenance of the minor children of parents divorced, separated or living separate, and such children are natives of this State, or have resided

five years within its limits, they <u>shall not be removed out of its jurisdiction</u> against their own consent, if of suitable age to signify the same, nor while under that age <u>without the consent of both parents</u>, <u>unless the court, upon cause shown, shall otherwise order</u>. The court, upon application of any person in behalf of such minors, may require such security and issue such writs and processes as shall be deemed proper to effect the purposes of this section.

[Emphasis added.]

There is no need to look to extrinsic evidence. The children "shall not be removed out of [this] jurisdiction . . . without the consent of both parents, unless the court, upon cause shown, shall otherwise order." <u>Ibid.</u> The plain text of the statute prohibited plaintiff from removing the children from New Jersey without consent or a court order.

B.

Plaintiff says he had no obligation to file a motion seeking permission to relocate to South Carolina with the children. To support that assertion, he relies on the May 2015 order and the motion judge's rulings. We reject, however, plaintiff's argument that the May 2015 order, or the motion judge's rulings, somehow satisfied his statutory obligation under N.J.S.A. 9:2-2 that he first obtain defendant's consent or obtain a court order before making the move to South Carolina. As to these contentions, the judge made detailed findings and conclusions of law.

The scope of our review of the trial judge's findings of fact is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). We will not reverse if on appeal the record supports the judge's factual findings by adequate, substantial, and credible evidence. Id. at 411-12 (citing Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974)). Moreover, "[b]ecause of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to [the judge's] fact[-]finding." Id. at 413. Although we defer to the judge's findings of fact when supported by sufficient evidence, we owe no deference to the judge's decision on an issue of law or the legal consequences that flow from established facts. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). Applying these standards, we have no reason to disturb the judge's findings of fact or conclusions of law.

The judge found that the May 2015 order (which did not alter the parties' joint custody) authorized plaintiff and the children to relocate only to Florida. The judge reached that finding after taking testimony from the parties and reading the order. The judge found that in March 2014, plaintiff began living with an individual who had two children of her own. He married her (the wife) in the summer of 2014, and plaintiff wished to take his children to Florida, to care for the wife's mother. The parties then negotiated the terms of

the May 2015 order, which included parenting time in New Jersey and Florida. Defendant testified that she understood the relocation would be around the Orlando area, where the wife's mother lived. The parties' negotiations had nothing to do with the children living in South Carolina under any circumstances.

But while still living in New Jersey with plaintiff in November 2015, the wife (who has since divorced plaintiff) and her two children left plaintiff and moved to Florida. The judge found that plaintiff then moved to South Carolina, while defendant's motion for overnight parenting time was pending, "to deny defendant parenting time," specifically to "avoid the possibility that the [motion judge would grant] overnight visits with defendant." He found plaintiff "took actions to be sure defendant did not have sufficient time to get a court order to stop the move."

Furthermore, in addition to the plain terms of the May 2015 order, the judge found plaintiff knew he lacked defendant's consent to move to South Carolina. Two weeks before plaintiff relocated to South Carolina, plaintiff retained counsel to prepare the proposed order seeking defendant's consent, which she never gave. And only plaintiff signed the proposed order on the morning he took the children to South Carolina. The judge therefore found that plaintiff moved to South Carolina "knowing full well that he was doing so

13

against the law of the State of New Jersey and the May 1, 2015 [c]onsent [o]rder."

Finally, plaintiff's contention that the motion judge's ruling satisfied N.J.S.A. 9:2-2 ignores, in the absence of defendant's consent, the statute's requirement that he show "cause" before removing the children from New Jersey. The motion judge made no such finding, and stated that plaintiff's relocation to South Carolina was essentially procedurally deficient. The temporary order entered by the motion judge did not satisfy the statute, especially because its issuance ignored plaintiff's ultimate burden of proof obligation. And there is no suggestion that defendant had consented to her children remaining in South Carolina, as ordered by the motion judge. In fact, the temporary arrangement led to defendant's OTSC.

## C.

Plaintiff argues that once he relocated with the children to South Carolina – without defendant's consent or a court order – defendant had the burden to show that plaintiff lacked cause to remove them from New Jersey before the judge could mandate their return. Plaintiff suggests that defendant would do that by demonstrating that it would be in the best interests of the children to return them to New Jersey. According to plaintiff's logic, defendant would need to file a motion to return the children, who he had

removed in violation of N.J.S.A. 9:2-2, and as part of that motion, assume the burden.

Such an approach would encourage individuals to first remove children from this jurisdiction, then later seek court approval. When the other parent objects beforehand, the process envisioned by N.J.S.A. 9:2-2 is for the parent seeking to relocate to first apply for an order permitting relocation, establish "cause," then relocate only if permitted by the court. The process does not permit a parent to relocate and then attempt to shift the burden to the other parent to show on an application to return the children that it would be in their best interests to do so.

When the other parent objects, the parent seeking removal of the children has the ultimate burden of proof by the preponderance of the evidence. Requiring the burden of proof to shift to defendant to show that it would be in the children's best interests, as a condition precedent to returning them to New Jersey, ignores the Legislature's reason for requiring a preliminary demonstration of "cause" under N.J.S.A. 9:2-2 before the actual removal. It is to "preserve the rights of the noncustodial parent and the child to maintain and develop their familial relationship." Bisbing, 230 N.J. at 323 (citations and internal quotation marks omitted). Under the facts of this case, preserving defendant's rights to maintain and develop her familial relationship

with the children required – by the plain text of N.J.S.A. 9:2-2 – that plaintiff first obtain an order, before removing the children, by showing "cause" existed for the relocation to South Carolina.

Plaintiff had numerous opportunities to apply for an order permitting the move before relocating to South Carolina. He could have filed such an application after the parties consented to the May 2015 order, when it became apparent to him that he would not be following through on his intention to live in Florida with the wife. Or plaintiff could have filed an OTSC immediately after defendant first objected to the move on April 3. There was no basis whatsoever to move the children to South Carolina without plaintiff first obtaining a court order to do so.

If plaintiff sought an order in April 2016, before he removed the children from New Jersey, the judge would have analyzed whether "cause" existed for the removal by applying the Baures standard. That is, plaintiff (as the parent seeking removal) would have had the burden of establishing "cause" under N.J.S.A. 9:2-2 by showing "good faith and that the move will not be inimical to the [children's] interest." Id. at 324 (quoting Baures, 167 N.J. at 116) (internal quotation marks omitted). And if he had sought such an order, the judge would have considered at a minimum the twelve factors relevant to his burden of proof. Baures, 167 N.J. at 116-17. Those factors would have been:

(1) the reasons given for the move; (2) the reasons given for the opposition; (3) the past history of dealings between the parties insofar as it bears on the reasons advanced by both parties for supporting and opposing the move; (4) whether the child will receive educational, health and leisure opportunities at least equal to what is available here; (5) any special needs or talents of the child that require accommodation and whether such accommodation or its equivalent is available in the new location; (6) whether a visitation and communication schedule can be developed that will allow the noncustodial parent to maintain a full and continuous relationship with the child; (7) the likelihood that the custodial parent will continue to foster the child's relationship with the noncustodial parent if the move is allowed; (8) the effect of the move on extended family relationships here and in the new location; (9) if the child is of age, his or her preference; (10) whether the child is entering his or her senior year in high school at which point he or she should generally not be moved until graduation without his or her consent; (11) whether the noncustodial parent has the ability to relocate; (12) any other factor bearing on the child's interest.

[Ibid.]

If plaintiff had not unilaterally removed the children and sought an order permitting the removal after the Court decided Bisbing on August 8, 2017, then the judge would have analyzed whether cause existed for the removal by applying the Bisbing standard. In place of the Baures standard, the Court stated in pertinent part that courts

should conduct a best interests analysis to determine "cause" under N.J.S.A. 9:2-2 in all contested relocation disputes in which the parents share legal

custody — whether the custody arrangement designates a parent of primary residence and a parent of alternate residence, or provides for equally shared custody . . . . A number of the statutory best interests factors will be directly relevant in typical relocation decisions and additional factors not set forth in the statute may also be considered in a given case.

In the best interests analysis, the parent of primary residence may have important insights about the arrangement that will most effectively serve the child. The parent of alternate residence may similarly offer significant information about the child. The views of other adults with close relationships with the child may also inform the court's decision . . . . The trial [judge] may consider other evidence, including documentary evidence, interviews with the children at the [judge's] discretion, and expert testimony.

[Bisbing, 230 N.J. at 335 (citations omitted).]

The Court concluded that under N.J.S.A. 9:2-2, "'cause' should be determined by a best interests analysis in which the court will consider all relevant factors set forth in N.J.S.A. 9:2-4(c), supplemented by other factors as appropriate." Id. at 338 (emphasis added). Because plaintiff never made such an application, the parties and the judge never argued what other factors might be relevant to relocation.

Therefore, under either Baures or Bisbing, had plaintiff sought an order under N.J.S.A. 9:2-2 to remove the children from New Jersey, plaintiff had the ultimate burden to show "cause" for the desired removal. But the judge and

18

parties never reached that step because plaintiff unlawfully removed the children. We flatly reject plaintiff's burden-shifting contention.

Finally, we have considered plaintiff's assertion that the judge failed to appoint a guardian ad litem for the children. Under the facts of this case, we conclude that this contention and plaintiff's remaining arguments – including that on this appeal, we should essentially retain original jurisdiction and enter an order permitting him to relocate with the children to South Carolina – are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION