**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0681-21

SIEDAH LEMON,

     Plaintiff-Respondent,

v.

DONTE M. GRADY,

     Defendant-Appellant.

_____

Submitted September 12, 2022 - Decided October 25, 2022

Before Judges Whipple and Mawla.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Burlington County, Docket No. FD-03-0257-20.

Hegge & Confusione, LLC, attorneys for appellant (Michael Confusione, of counsel and on the brief).

Respondent has not filed a brief.

PER CURIAM

Defendant Donte Grady appeals from an October 13, 2021 order of the Family Part permitting plaintiff Seidah Lemon to remove the parties' son from Maple Shade to Baltimore, Maryland. We affirm.

Plaintiff and defendant are the parents of a boy, who was eight years old at the time of the plenary hearing. The parties have joint custody with plaintiff as parent of primary residence and defendant as parent of alternate residence. This matter began with defendant's motion for modification of the custody order after plaintiff moved to Baltimore with the child without a court order granting leave to relocate and, allegedly, without defendant's consent. The Family Part judge ordered a plenary hearing to determine whether the move was in the child's best interests and ordered that child support be suspended pending the hearing.

The plenary hearing was conducted remotely on October 13, 2021. Each party offered their own testimony. Defendant testified that plaintiff moved with their son without his knowledge or consent, stating: "I actually didn't find out that she moved to Maryland from her. I found out from [my son], and she had already moved to Maryland by the time I found out that she did, so I think . . . there was no communication there as far as that situation."

Under the parties' parenting schedule prior to the relocation, as the parent of alternate residence, defendant's parenting time was every Wednesday night,

2

A-0681-21

every Thursday night, and every other weekend, Saturday to Sunday afternoon. Defendant has a two-bedroom apartment where the child has his own room. The child had attended elementary school in Maple Shade, near defendant's residence. Defendant asserted that, because plaintiff moved to Maryland, he was too far away to continue as the parent of alternate residence under the same visitation schedule.

Defendant asked the court not to permit the removal and stressed there was more stability for the child in New Jersey where he had many family connections. He asked the court to consider that the child would soon be entering his teen years and needed to spend more time with his father.

Plaintiff testified that the child had lived in New Jersey his entire life before she moved, first living in Burlington Township, then in Maple Shade where he attended school. She acknowledged defendant's involvement in raising their son but complained that "[defendant] has never had him full time." Plaintiff told the court that the child "needs stability . . . but now you're trying to remove him from being with me full time, which he's always been with me full time." Plaintiff testified she lives in Baltimore with her sister, who works from home. So, if she were not able to get to her son due to an emergency, her sister or her sister's husband or other relatives would be available to care for

 A-0681-21

him. She said that the child was in a good atmosphere in Maryland. Plaintiff also testified that defendant does not routinely call the child or take interest in the child's activities such as karate and jiu-jitsu.

Plaintiff explained that, during the pandemic, she was furloughed from her job and encountered financial difficulties. She stated:

> I start[ed] applying for jobs and the jobs were not . . . as flexible [as] I needed because [the child] was not in school, so I had to do virtual school with [him], and I didn't have anybody to do virtual school with him. My brother's wife, they have four kids already so that would have been too much for me to ask her hey, can [my child] go over there so he can do virtual school . . . with you guys while I go to work. It would have been too much to ask because she just had a new baby as well, so I had to take that sacrifice with not working and doing the virtual school with [him].

Plaintiff applied for other jobs until her sister told her about opportunities in Baltimore. Plaintiff testified that she spoke with defendant

> in May . . . and I told him look, I'm looking to move to Maryland . . . and I told him and I said I was looking to drop the child support case. He was like oh, all right, thanks, I appreciate you, and I'm like all right. So then we moved out here in June, the first week of June, and I never dropped the child support case so he was upset that I never dropped the child support case.

Plaintiff explained that she still wanted defendant to see the child every other weekend and continue paying child support. She argued that the court

4

should not give defendant primary custody and the move to Maryland was not detrimental to her son or defendant.

The trial court agreed, stating:

> I do find based upon [plaintiff]'s testimony that there was cause in the best interest of [the child] to move to Maryland in order to establish a better job for her and also for her—for [the child] . . . . [B]ased upon the analysis I've conducted, the testimony of [defendant], the testimony of [plaintiff] and the factors of the Bisbing[1] Court analysis, I believe . . . that the move was in the best interests of [the child], he does have support down there, he has cousins that treat him like brothers. I don't find that if [the child] was ordered to go back to New Jersey with [defendant] it would be in his best interests. That would be a very big change for him.

The court entered the October 13, 2021 order permitting the child to remain in Maryland with plaintiff as parent of primary residence and defendant as parent of alternate residence. On November 23, 2021, the court filed an amplification of its decision, cited N.J.S.A. 9:2-2 and -4, and explained how the factors identified under the statute supported the decision to permit relocation. The court also entered a March 4, 2022 order for child support. This appeal followed.

---

[1] Bisbing v. Bisbing, 230 N.J. 309 (2017).

On appeal, defendant asks us to reverse the order allowing plaintiff to move with the child. He argues that the court erred in finding removal was in the child's best interests and that, because plaintiff never sought leave of the court before she relocated, the court should have denied permission to move based on a violation of the initial custody order.

Our scope of review of Family Part orders is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). We will not disturb the "'factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 484 (1974) (quoting Fagliarone v. Twp. of No. Bergen, 78 N.J. Super. 154, 155 (App. 1963)).

Substantial deference is owed to the Family Part's findings of fact because of its special expertise in family matters. Cesare, 154 N.J. at 413. "Deference is especially appropriate when the evidence is 'largely testimonial and involves questions of credibility.'" Id. at 412 (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). A trial judge who observes witnesses and listens to their testimony is in the best position to "make first-hand credibility judgments about the witnesses who appear on the stand." N.J. Div. of Youth & Family

A-0681-21

Servs. v. E.P., 196 N.J. 88, 104 (2008). Thus, this court does not "'weigh the evidence, assess the credibility of witnesses, or make conclusions about the evidence.'" Mountain Hill, LLC v. Twp. of Middletown, 399 N.J. Super. 486, 498 (App. Div. 2008) (quoting State v. Barone, 147 N.J. 599, 615 (1997)).

Under N.J.S.A. 9:2-2, a parent who seeks to remove a child from this state when the other parent does not consent must demonstrate "cause" for the removal. The legislative intent of this statute was "'to preserve the rights of the noncustodial parent and the child to maintain and develop their familial relationship.'" Bisbing, 230 N.J. at 323 (quoting Holder v. Polanski, 111 N.J. 344, 350 (1988)).

In Bisbing, the Court interpreted "cause" under N.J.S.A. 9:2-2 as requiring the petitioning parent to satisfy the best-interests analysis set forth in N.J.S.A. 9:2-4(c), "supplemented by other factors as appropriate." Id. at 338 (citing N.J.S.A. 9:2-4(c)). In making "the sensitive determination of cause[, a court] must weigh the custodial parent's interest in freedom of movement as qualified by his or her custodial obligation, the State's interest in protecting the best interests of the child, and the competing interests of the noncustodial parent." Id. at 323 (internal citation omitted).

A-0681-21

Here, the trial judge appropriately applied the <u>Bisbing</u> standard and relied on the factors enumerated in N.J.S.A. 9:2-4(c) in deciding the motion, as explained in the court's amplification. He concluded:

> 1. The parents' ability to agree, communicate and cooperate in matter relating to the child.
>
> Historically, the parties have cooperated and communicated regarding parenting time and matters relating to the minor child. While [defendant] testified that he did not consent to the child's relocation and that he had no knowledge of the child's relocation until [plaintiff] moved to Maryland, [plaintiff] credibly testified that she verbally informed [defendant] that she was moving and would not pursue child support. [Plaintiff] believed that she had [defendant]'s consent to move. After [plaintiff]'s move, she did not "drop" child support, and [defendant] wanted to enforce the verbal agreement the parties made.
>
> 2. The parents' willingness to accept custody and any history of unwillingness to allow parenting time not based on substantiated abuse.
>
> Neither parent has withheld or frustrated the other parent's ability to exercise parenting time. After [plaintiff]'s move, [defendant] sought to enforce the parties' prior parenting time arrangement under a prior order.
>
> 3. The interaction and relationship of the child with its parents and siblings.
>
> Both parents have a good relationship with the minor child. While the minor child does not have siblings, the minor child has cousins with whom he

8

resides in Maryland. The minor child has a close, sibling-like relationship with his cousins.

4. This history of domestic violence, if any.

. . . .

5. The safety of the child and the safety of either parent from physical abuse by the other parent.

. . . .

6. The preference of the child when of sufficient age and capacity to reason so as to form an intelligent decision.

At the time of the [p]lenary [h]earing, the minor child was eight . . . years old and not of sufficient age to reason so as to form such a preference.

7. The needs of the child.

. . . .

8. The stability of the home environment offered.

The minor child has support and a family network in Maryland. [Plaintiff] lives with her sister, her sister's husband, and their children. [Defendant] testified that he has family nearby, and the minor child has a good relationship with his family. [Defendant] also testified he has an aunt who lives fifteen minutes away and is involved in the minor child. [Plaintiff] testified credibly that prior to the child's move to Maryland, [defendant]'s family did not provide support to the child.

The minor child is also involved in extra-curricular activities, including [k]arate and [jiu-jitsu] in Maryland.

9. The fitness of the parents.

. . . .

10. The geographical proximity of the parents' homes.

Pursuant to a prior [c]ourt order dated August 26, 2021, the parties were meeting at a half-way point between their homes for parenting time exchanges. [Defendant] testified that it takes one to two hours to drive to the halfway point, depending on the traffic, for this parenting time.

11. The extent and quality of the time spent with the child prior to or subsequent to the separation.

[The m]inor child has resided with [plaintiff] since birth. Prior to [plaintiff]'s move to Maryland, [defendant] exercised overnight parenting time on Wednesdays and Thursdays, along with every other weekend.

12. The parents' employment responsibilities.

[Plaintiff] faced financial hardship in New Jersey and moved to Maryland to pursue employment opportunities and to find a better job. [Defendant] works fulltime in New Jersey.

13. The age and number of the children.

There is one minor child, age eight . . . .

A-0681-21

The trial judge concluded, based upon an analysis of the best-interests factors pursuant to Bisbing, that there is "cause" to authorize the child's removal to Maryland, and it was in his best interests. He additionally concluded that returning the child to New Jersey and designating father as parent of primary residence would not be in the best interests of the child. Returning him to New Jersey would remove him from his school, extra-curricular activities, and support network in Maryland. Further, the child never resided with father and such a change would be disruptive and detrimental.

We reject defendant's argument that the trial court was barred from permitting relocation pursuant to Dever v. Howell, 456 N.J. Super. 300, 303 (App. Div. 2018). In Dever, the plaintiff gave defendant less than one day's notice about moving, and although the defendant objected, the plaintiff moved to South Carolina without first obtaining an order permitting the removal. Id. at 302.

> Defendant filed an order to show cause seeking custody and the return of the children to New Jersey. The judge found plaintiff knew the statute required that he obtain an order permitting the removal before relocating to South Carolina, but he removed the children anyway, because he feared the court might grant defendant's pending motion for overnight visits with the children. After losing the trial, plaintiff sought reconsideration of the order under review, and for the first time, requested a best[-]interests analysis.

11

We hold—because defendant had objected to the South Carolina move—that N.J.S.A. 9:2-2 required plaintiff to first obtain an order permitting the removal of the children before the actual relocation. The time for the judge to determine whether plaintiff had established "cause" for the removal of the children would have been before the relocation occurred. Requiring the judge to analyze whether "cause" existed after the relocation ignores the unambiguous plain text of the statute, plaintiff's ultimate burden of proof to demonstrate "cause" before the move occurs, and the important Legislative purpose for requiring a showing of cause— that is, to preserve the rights of a noncustodial parent to maintain and develop her familial relationship.

[Id. at 302–03.]

Here, the court found plaintiff credibly believed she had defendant's consent to move to Baltimore. We defer to that finding and discern no Dever violation.

Defendant also argues the court erred in failing to attempt to ascertain the child's wishes. The court found at the time of the plenary hearing "the minor child was eight . . . years old and not of sufficient age to reason so as to form such a preference."

Rule 5:8-6 reads in part as follows:

As part of the custody hearing, the court may on its own motion or at the request of a litigant conduct an in camera interview with the child(ren). In the absence of good cause, the decision to conduct an interview shall

be made before trial. If the court elects not to conduct an interview, it shall place its reasons on the record.

[R. 5:8-6.]

The Rule annotation explains "R[ule] 5:8-6 now provides that the judge's interview with the child is discretionary rather than mandatory irrespective of the age of the child." Id. at cmt. 1.4.3.

We note neither party asked the court to interview the child and the court did not see the need to order an interview on its own motion. New Jersey, like other states,[2] permits judges to consider the preference of a child in a custody case, as long as the child is sufficiently mature. Indeed, based upon our survey of the practices in other states, many states require the judge to consider a mature child's opinion. New Jersey, like most states, leaves the decision to

---

[2] California, New Mexico, and West Virginia presume children fourteen and older are sufficiently mature. CAL. FAM. CODE § 3042(c) (West 2022); Stone v. Stone, 443 P.2d 741, 742 (N.M. 1968); W. VA. CODE § 44-10-4(a) (2022). Two states, Indiana and Utah, give extra weight to the opinions of mature children. Holt v. State, 561 N.E.2d 830, 831 (Ind. 1990); UTAH CODE ANN. § 30-3-10(5)(b)(ii) (West 2022).

Mississippi, Oklahoma, Tennessee and Texas presume children twelve and older are mature enough to form a preference worth examining. MISS. CODE. ANN. § 93-11-65(1)(a) (West 2022); OKLA. STAT. tit. 43, § 113(c) (West 2022); TENN. CODE ANN. § 36-6-106(a)(13) (West 2022); TEX. FAM. CODE ANN. § 153.009(a) (West 2022).

Georgia law sets the age at eleven. GA. CODE ANN. § 19-9-3 (West 2022). No states require a court to interview a child of eight or presume they are mature enough to testify.

A-0681-21

judge's discretion as a factor to consider in the context of N.J.S.A. 9:2-4(c). See Lavene v. Lavene, 148 N.J. Super. 267, 271–72 (App. Div. 1977).

Therefore, it was not a mistaken exercise of discretion for the court to decline to interview an eight-year-old after its consideration of the relevant factors in N.J.S.A. 9:2-4(c), given the child was "doing well[,]" was continuing to see his father consistently every other weekend, and the lack of evidence presented pointing to the necessity for an interview. In reaching this conclusion, we do not suggest a court should never interview a young child. Rather, the court should exercise discretion with appropriate reasoning as it did here.

Because the Family Part judge applied the correct legal standard and statutory factors, and because his decision is supported by adequate, substantial, and credible evidence in the record, we see no reason to disturb it.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14

A-0681-21