**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3046-23

K.K.,[1]

    Plaintiff-Appellant,

v.

L.K.,

    Defendant-Respondent.

_____

> Argued November 7, 2024 – Decided November 18, 2024
>
> Before Judges Mawla and Natali.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FM-02-1631-21.
>
> Matteu D. Nunn argued the cause for appellant (Einhorn, Barbarito, Frost & Botwinick, PC, attorneys; Matheu D. Nunn and Jessie M. Mills, on the briefs).
>
> Stephanie O'Neill argued the cause for respondent (Garcia Law, LLC, attorneys; Stephanie O'Neill, on the brief).

---

[1] We use initials pursuant to <u>Rule</u> 1:38-3(a)(1).

PER CURIAM

Plaintiff K.K. appeals from an April 24, 2024 final judgment of divorce, which granted defendant L.K. primary residential custody of the parties' children and permitted them to remain in California. We affirm.

The parties were married in 2017. Two children were born during the marriage. They were three and five years old when the court tried this matter. The older child was born in California, and the younger one was born in New Jersey. The parties resided together in New Jersey during the marriage but experienced several separations and reconciliations, which caused them to live apart, with defendant and the children often returning to live with her family in California.

In January 2021, the parties took a family vacation to California to visit defendant's family. Near the end of their stay, defendant decided to remain in California with the children. Plaintiff had to return to New Jersey early to operate his business. This was not unusual because on prior occasions plaintiff often had to leave before defendant to return to New Jersey for work purposes. On this occasion, after plaintiff left for New Jersey, defendant sent him an online real estate listing for a house in New Jersey, stating "[l]et's buy it [p]leaseeeee."

2

In February 2021, plaintiff asked defendant when she and the children were returning to New Jersey. She informed him they were not coming back and blocked his telephone number, causing plaintiff to contact her via Facebook Messenger. On February 3, 2021, defendant wrote to plaintiff, "we have to end our marriage life and stay good friends for our kids . . . ." Plaintiff responded that he did not want the children to remain in California and they should return to New Jersey.

On February 10, 2021, plaintiff filed a complaint for divorce. Shortly after the filing, he began a new relationship with a girlfriend. Plaintiff resided with his girlfriend pendente lite. They had two children who were born during the divorce proceedings.

On June 23, 2021, the trial court entered a case management order memorializing that defendant was in California with the children, and the parties would resolve matters by either entering a parenting time plan or through an "order to show cause (OTSC) to be filed to return the children." Throughout the remainder of 2021, the record reflects the parties attended an early settlement panel and were engaged in attempts to settle the divorce, including exchanging settlement proposals and a draft marital settlement agreement.

A-3046-23

On February 3, 2022, following an intensive settlement conference, the court entered an order referring the parties to parenting time mediation. The order provided that if the mediation was unsuccessful, the court would conduct a best interests hearing. On February 23, 2022, the trial court, sua sponte, ordered defendant "to return the children to New Jersey immediately . . . ." Both parties were ordered to appear in court for a case management conference on April 13, 2022.

On March 23, 2022, defendant filed an OTSC to stay the February 23 order; she sought to remain in California with the children pending the divorce and requested a best interests evaluation. The court granted the OTSC conditioned on defendant retaining an expert by April 13, 2022, to conduct a best interests evaluation. The order also scheduled a case management conference for April 13 and memorialized that the court would address whether the stay should be vacated at the conference.

On April 13, the trial court scheduled an intensive settlement conference (ISC) and ordered the parties to retain experts by May 3, 2022. The court granted plaintiff pendente lite parenting time. It case managed the matter at the May ISC and during June, August, September, and November 2022, as the parties' custody experts were conducting their evaluations. The experts' reports

A-3046-23

were completed by December 2022 and the court scheduled trial. The initial February 2023 trial date was adjourned to March 2023, and adjourned again until September 2023.

On March 7, 2023, plaintiff filed a motion for return of the children to New Jersey pending the divorce. Defendant opposed the motion. On April 27, 2023, the trial court denied plaintiff's application and instead granted him summer parenting time in New Jersey. The court's order noted that, if trial did not commence by September 15, 2023, plaintiff would be permitted to renew his application, so long as he submitted proof that he has identified a single-family home in New Jersey for defendant and the children to live in. The court required plaintiff to provide proof he either paid one year's rent in advance for a home for defendant and the children or placed an amount equal to a year's rent in his attorney's trust account. The order stated: "No bias, prejudice, or inferences shall be made due to the children having been temporarily relocated to California."

In late March 2023, plaintiff reported allegations of "basic childcare concerns on behalf of the children" to the Division of Child Protection and Permanency (Division). He claimed the children had to remain in New Jersey pending the investigation, however, the Division advised defendant's counsel

5

this was untrue. The Division turned the case over to its California counterpart. The record does not indicate what came of the investigation.

On May 11, 2023, the trial court entered an order with similar provisions as the April order. The May order indicated counsel could inquire with the court by September 1, 2023, whether the trial would commence on September 15, 2023. On August 17, 2023, the court entered a case management order, noting alimony and equitable distribution were not trial issues. The order reflected that plaintiff had filed a motion for the children's return in July 2023, which he withdrew without prejudice, pending the outcome of the hearing scheduled to begin on September 18, 2023.

The matter was tried over five days, culminating in the trial judge rendering a detailed oral opinion on April 24, 2024. The primary issues were: custody and parenting time; defendant's request to permanently remove the children to California; child support; and counsel fees. Both parties and their custody experts testified. The judge found all the witnesses credible.

Plaintiff's expert described the parties' marriage as tumultuous and "characterized by repeated conflicts, family pressures, and interpersonal incompatibilities." Although he found defendant "would have a harder time living in New Jersey without the support of her family . . . in California[]," he

nonetheless opined the children should be returned to New Jersey and the parties should share fifty-fifty custody. He testified the children need both parents and defendant's removal of the children was "irresponsibl[e,]" because it potentially harmed them by separating them from plaintiff.

Plaintiff's expert opined the distance between the parties made it impossible for plaintiff to see the children on a regular basis, but he conceded plaintiff "has been using Facetime daily to interact with the children and has visited the children in California." Defendant "did not appear . . . unwilling to allow parenting time, as long as it occurred in California." However, defendant "did not really understand the importance of the present co-parenting situation, including the implications [of] separating the father from the children . . . ." The fact plaintiff had other children with his girlfriend did not affect the expert's findings because the girlfriend "would be a perfectly good parenting figure[,]" and he had "no reason to believe that more kids would make her less of a competent parent."

Plaintiff testified he never consented to the children remaining in California and defendant kept them there against his will. She did not co-parent and withheld information regarding the children's medical treatment from him. He could create a more stable home life for the children in New Jersey because

7

they would:  reside with him, his girlfriend, and their children; have close contact with the paternal grandparents; and access to good schools and dance classes.  He would help defendant with housing.  His work schedule offered him greater flexibility to be with the children whereas defendant had to leave the children with her parents while she worked.  Plaintiff could not move to California because there were tax advantages to maintaining his business in New Jersey.  He could not operate remotely because his contacts were in the metropolitan area, and his warehouse was in New Jersey.

Defendant's expert opined the children should be permitted to remain in California because they have "established a life in California with school, activities[,] and friends, and a move to New Jersey would be disruptive."  He noted the children spent most of their lives in California and are "California kids."  They were "used to living in California [and] . . . they just went back home and didn't remain in New Jersey."  And "[u]prooting the children from their home in California would be stressful for them and disruptive to their daily living routine."

The expert noted that "for a good portion of their relationship [the parties] lived with [defendant's] parents in California."  After marrying, they resided in California with defendant's parents for more than a year.  "There were times

8

when [defendant] stayed in California with the children and stayed with her family while [plaintiff] returned to New Jersey during the marriage." Even after coming to New Jersey "there was a back-and-forth period of time with each of the parents. But predominantly they spent more time in California than in New Jersey."

The defense expert also testified defendant has been the children's primary caregiver; she tended to the children's changing, feeding, and medical needs. For example, defendant "saw to it that . . . [the older child] got speech therapy for about six months. And [plaintiff] wasn't really involved. He didn't even have a conference with the speech therapist or check up on the progress. He was spending most of his time involved with his own work schedule . . . ."

The expert noted plaintiff was preoccupied with a "persistent concern about losing his kids and waging war with [defendant, which was] a major obstacle to effective and cooperative co-parenting." On the other hand, like plaintiff's expert, the defense expert noted defendant did "not impede[] access to the children . . . ." The expert opined plaintiff needed to focus more on the children's happiness and "moderating his emotions" so that he could co-parent with defendant.

9

Defendant testified she did not consider New Jersey her home and did not plan to permanently reside in the state. She did not have a New Jersey driver's license or any friends or family in the state, save for a cousin. The children had resided in California since January 2021 and removing them would harm them because they had a stable home life there. The children had many friends and were happy in California. The older child had been enrolled in gymnastics for several years and would have to withdraw and re-enroll in her extracurricular activities and school, which would be disruptive.

Defendant testified she was the children's primary caregiver since their births. She was responsible for their daily care, including when they were sick. She had steady employment in California, no job prospects in New Jersey, and could not afford to live in New Jersey. She testified plaintiff worked long hours, even when he had the children. In one instance, he took them to his warehouse to keep working, which was unsafe.

The trial judge awarded the parties joint legal custody, noting neither party opposed sharing legal custody. She then addressed physical custody by assessing the evidence and each of the fourteen N.J.S.A. 9:2-4(c) factors.

The judge found the parties were unable to agree and communicate on matters involving the children, and the parental conflict would not improve

10

based on the children's residence. Therefore, the first best interests factor favored designating defendant as the parent of primary residence. The judge appointed a parenting coordinator to facilitate the parties' communication.

The judge found the second best interests factor favored neither party because "[b]oth are willing to accept custody of the children [and t]here have been no . . . substantiated findings of abuse or neglect." Factor three favored defendant because even though the children had a positive relationship with each parent, plaintiff and his girlfriend had a two year old and five month old, whereas in California they were "the only children in the household . . . ." The children needed "to adjust in spending time with [plaintiff] as well as their siblings."

The fourth best interests factor was not applicable. Although both parties alleged there was domestic violence between them, the judge found "none of the purported acts . . . were ever substantiated." Likewise factor five was inapplicable because there was no evidence that a custody award should be made to ensure the safety of a child or party from physical abuse by the other parent. Best interests factor six was inapplicable because the judge found neither child was "of sufficient age to form an intelligent decision" regarding their preference for custody.

11

As for factor seven, the parties did not present "substantial evidence" regarding the children's needs. However, the judge noted plaintiff placed his interest in seeing the children over their happiness, and defendant did not fully appreciate how the separation impacted the children. Notwithstanding these deficits, the judge pointed to the fact that during the marriage, defendant was the primary caregiver, and currently meets the children's day-to-day needs, including when they are sick. Therefore, this factor favored defendant.

Best interests factor eight weighed in favor of defendant. Both parents could provide a stable home environment. They both cared for the children and had extended family with whom the children had relationships. Although plaintiff enjoyed financial stability, the children were "still adjusting to hav[ing] siblings . . . ." Conversely, although defendant could not independently provide the children with a home and relied on her parents for support, there were no other children living in her home. Her job gave her flexibility while also allowing her to care for the children.

The judge concluded that designating defendant the parent of primary residence and allowing her to remain in California would continue the role she had during the marriage and allow the children to maintain their activities, friendships, medical care, and education. Under these circumstances, the judge

12

concluded removing defendant as the parent of primary residence was not in the children's best interests and requiring her to return to New Jersey was not a viable option.

As for best interests factor nine, the judge noted the younger child was not yet in elementary school and the older child was in kindergarten. Therefore, the children's education was neither diminished nor improved by permitting them to remain in California. "However, reducing any stress which could be caused by having to adjust to a new environment would be in the best interest[s] of the children." The judge explained the older child was "in the early stages of her education, she has started to interact with other children and . . . if she were to return to . . . New Jersey it could cause stress and would . . . force her to adjust to a[] new environment." Therefore, this factor favored defendant.

The judge found factor ten inapplicable because neither expert questioned the parties' fitness. Factor eleven favored defendant. Despite the distance between the parties, "with daily telephone contact and video contact with the children, concentrated parenting time during the summer, long weekends and school breaks and the use of a parent coordinator the parties will learn to co-parent effectively, and [plaintiff] will maintain a strong relationship with the children."

13

Best interests factor twelve also favored defendant because she was the primary caregiver. Defendant "was highly involved and cared for the children. [Plaintiff] worked outside the home. There were times when [defendant] stayed in California with the children and stayed with her family while [plaintiff] returned to New Jersey during the marriage." The evidence showed that "[a]s the parties traveled back and forth between New Jersey and California the children followed [defendant] during the marriage and after separation in January of 2021." Although defendant and the children lived in California "over [plaintiff's] objection. The court permitted [her] to remain [in] California pending trial. This arrangement allowed [defendant] to have more time, however [plaintiff] also exercised parenting time for extended periods of time in New Jersey."

Factor thirteen favored defendant because plaintiff could not run his business remotely whereas defendant worked "part time during school hours." Although both parties had support at home, plaintiff's girlfriend "also has to care for two . . . very young children of her own." Defendant had the support of her parents and "if [she] were to live in New Jersey[,] she would not have the benefit of her family members to assist her if she needs backup. As a primary care giver

[sic] . . . of the children the proximity to [defendant's] support system is important . . . ."

The number of children and their ages did not favor either party. Therefore, best interests factor fourteen was not relevant.

The trial judge concluded it was in the children's best interests to permit defendant to permanently remove them to California. The judge designated defendant as parent of primary residence and plaintiff as the parent of alternate residence. She awarded plaintiff summer parenting time beginning one week after the end of school until one week before the first day of school. The judge granted plaintiff parenting time on all long weekends when the children do not have school and alternated the Thanksgiving and Easter holiday breaks between the parties. The Christmas and New Years holiday break would be shared. Plaintiff was granted daily telephone and video contact with the children and the right to visit them in California during months in which he does not have parenting time.

I.

Our standard of review is such that we will not disturb a trial judge's factual findings when they are "supported by adequate, substantial and credible evidence." Rova Farms Resort v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974).

We only "disturb the factual findings and legal conclusions of the trial judge [when] we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Ibid. (quoting Fagliarone v. Twp. of N. Bergen, 78 N.J. Super. 154, 155 (App. Div. 1963)). However, "all legal issues are reviewed de novo." Ricci v. Ricci, 448 N.J. Super. 546, 565 (App. Div. 2017) (citing Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013)).

Family courts maintain "special jurisdiction and expertise in family matters," so "appellate courts should accord deference to family court factfinding." Cesare v. Cesare, 154 N.J. 394, 413 (1998). "Deference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" Id. at 412 (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). "Discretionary determinations, supported by the record, are examined to discern whether an abuse of reasoned discretion has occurred." Ricci, 448 N.J. Super. at 564.

Plaintiff argues the trial judge did not consider the children's best interests, but rather applied the statutory best interests factors by considering defendant's best interests. In other words, the judge applied the legal standard in Baures v. Lewis, 167 N.J. 91, 116 (2001), which focuses on the needs of the

parent seeking to remove the children, rather than considering the children's best interests under <u>Bisbing v. Bisbing</u>, 230 N.J. 309, 313 (2017), which overruled <u>Baures</u>.

Plaintiff asserts the court's failure to order the children's return to New Jersey pendente lite tainted the trial because the focus became whether it was in the children's best interests to return to New Jersey. This improperly shifted the burden of proof to plaintiff contrary to N.J.S.A. 9:2-2 and <u>Dever v. Howell</u>, 456 N.J. Super. 300, 311 (App. Div. 2018), which places the burden on the parent seeking removal to show cause for the removal based on the best interests factors.

Defendant contests the trial judge's findings under virtually each best interests factor. Beyond the factors, he alleges the judge also failed to consider the fact his relationship with the children was cut off. He claims the facts supported an award of fifty-fifty parenting time because N.J.S.A. 9:2-4 declares our public policy is "to assure minor children of frequent and continuing contact with both parents after . . . separat[ion] . . . ."

II.

Courts should apply the best interests analysis to determine cause under N.J.S.A. 9:2-4 in all removal disputes.  Bisbing, 230 N.J. at 312-13.  N.J.S.A. 9:2-4(c) states:

> In making an award of custody, the court shall consider but not be limited to the following factors:  the parents' ability to agree, communicate and cooperate in matters relating to the child; the parents' willingness to accept custody and any history of unwillingness to allow parenting time not based on substantiated abuse; the interaction and relationship of the child with its parents and siblings; the history of domestic violence, if any; the safety of the child and the safety of either parent from physical abuse by the other parent; the preference of the child when of sufficient age and capacity to reason so as to form an intelligent decision; the needs of the child; the stability of the home environment offered; the quality and continuity of the child's education; the fitness of the parents; the geographical proximity of the parents' homes; the extent and quality of the time spent with the child prior to or subsequent to the separation; the parents' employment responsibilities; and the age and number of the children.

In Pascale v. Pascale, 140 N.J. 583, 598 (1995), our Supreme Court held: "Although both [legal and physical custody] create responsibility over children of [separated parents], the primary caretaker has the greater physical and emotional role."  The Court stated:

> [T]he many tasks that make one parent the primary, rather than secondary, caretaker [include]: preparing and planning of meals; bathing, grooming, and dressing; purchasing, cleaning, and caring for clothes; medical care, including nursing and general trips to physicians; arranging for social interaction among peers; arranging alternative care, i.e., babysitting or daycare; putting child to bed at night, attending to child in the middle of the night, and waking child in the morning; disciplining; and educating the child in a religious or cultural manner.
>
> [Id. at 598-99.]

The secondary caretaker role is equally important and exercised by means of a parenting time schedule befitting the circumstances of the case. Id. at 597.

### A.

We reject plaintiff's claim the trial judge did not consider the children's best interests and viewed the case through the lens of defendant's best interests. The judge's findings under the statutory factors clearly considered whether those factors served the children's best interests. Several of the best interests factors focus on the parents' roles in the children's lives or the parents' living and working circumstances. This does not mean that the court reverted to the now-discarded Baures standard. Under Baures, the parent seeking the removal had to prove their move was in good faith and not inimical to the children's best interests by addressing the following factors:

(1) the reasons given for the move; (2) the reasons given for the opposition; (3) the past history of dealings between the parties insofar as it bears on the reasons advanced by both parties for supporting and opposing the move; (4) whether the child will receive educational, health and leisure opportunities at least equal to what is available here; (5) any special needs or talents of the child that require accommodation and whether such accommodation or its equivalent is available in the new location; (6) whether a visitation and communication schedule can be developed that will allow the noncustodial parent to maintain a full and continuous relationship with the child; (7) the likelihood that the custodial parent will continue to foster the child's relationship with the noncustodial parent if the move is allowed; (8) the effect of the move on extended family relationships here and in the new location; (9) if the child is of age, [their] preference; (10) whether the child is entering [their] senior year in high school at which point [they] should generally not be moved until graduation without [their] consent; (11) whether the noncustodial parent has the ability to relocate; (12) any other factor bearing on the child's interest.

[167 N.J. at 116-17.]

That some of the Baures factors implicate similar considerations under the N.J.S.A. 9:2-4(c) best interests factors, namely the: children's educational and general needs; parties' interactions with one another and the children; and children's ages and preferences, does not persuade us the judge adjudicated this case using Baures. Her findings clearly considered the statutory best interests factors. Moreover, she was not confined to the statutory factors because

20

N.J.S.A. 9:2-4(c) expressly provides Family Part judges "shall consider but not be limited to the [statutory] factors . . . ."  Therefore, it was reasonable, indeed expected, that the trial judge would discuss the parties' living circumstances in New Jersey and California, their extended family relationships, and their working conditions.  However, this did not transform the judge's findings into a Baures analysis.

We are unconvinced the fact that the children were permitted to remain in California pendente lite either improperly shifted the burden of proof onto plaintiff or tainted the outcome of the case.  The record not only shows a history of travel and residency on both coasts, but also that the parties' relationship endured tumult and defendant's decision to remain in California was borne of the breakdown in the parties' relationship, rather than a desire to prevent plaintiff from having custody or parenting time.  Under the circumstances, it was reasonable for defendant to remain in California as she did not have a means of residing independently with the children in New Jersey.  Given that the evidence supports the judge's finding that defendant fulfilled the role of the children's primary caregiver as defined by Pascale, it would be unreasonable to compel her to return to New Jersey without a means of supporting herself and the children

21

and living independently of plaintiff. The argument that the court shifted the burden of proof lacks merit.

B.

Plaintiff attacks the trial judge's statutory findings. He claims she could not find that remaining in California would improve the parties' ability to communicate because both experts opined the distance worsened the parties' relationship. Moreover, plaintiff testified that co-parenting would be easier if defendant was in New Jersey.

Plaintiff argues best interests factor two could not be in equipoise as the judge found, because she ignored that defendant would not permit parenting time in New Jersey absent a court order. Defendant admitted she turned off the Facetime feature on the older child's iPad, preventing her from calling plaintiff whenever she wanted.

Plaintiff claims the trial judge misapplied the third best interests factor because she assumed the children living in a blended household with their step-siblings was not in their best interests. The judge also disregarded his testimony the children enjoyed a good relationship with his girlfriend, having spent two summers in New Jersey with plaintiff's family. Her conclusion that this factor favored defendant because the children would have to adjust to living with their

A-3046-23

blended family ignored the fact defendant removed the children from New Jersey. In other words, but for defendant's unilateral actions, there would be no need for the children to adjust.

Plaintiff asserts the trial judge should have considered that defendant made allegations of domestic violence that were neither supported by the record nor proven when it weighed best interests factor four. The judge's factor seven findings were also erroneous because there was no "substantial evidence" presented to show the children's needs were an issue. The finding that defendant was better able to meet the children's needs ignored: the pendente lite order, which stated the court would not draw any inferences from the fact the children resided in California pendente lite; that plaintiff sought their return pendente lite; and that the judge found he was a capable of meeting their needs.

Plaintiff contends the trial judge misapplied best interests factor eight because both experts opined each party provided a stable home environment, and both parties were amenable to shared custody. The judge found this factor favored defendant, despite the fact she deprived him of the children, depends on her parents for shelter, and works only part-time. Plaintiff argues the judge was mistaken when she found that "removing [d]efendant as parent of primary residen[ce] of the children is not in the children's best interest" because

23

defendant's primary residence status was the product of her unlawfully removing the children.

Likewise, the trial judge erred in weighing factor nine because her concern about disrupting the older child's schooling and activities was predicated on defendant unlawfully keeping the children in California. The judge also failed to consider that disrupting the education of young children is far different than disrupting a child's high school education.

The trial judge also misinterpreted best interests factor eleven because she ignored defendant's misconduct. She also did not consider his expert's testimony that the distance between the parties' homes was the "central risk factor in this case." The judge should have weighed factor twelve evenly because defendant's decision to keep the children in California, and her refusal to permit parenting time in New Jersey prevented him from spending more time with them.

The judge also ignored defendant's unilateral removal of the children when she assessed factor thirteen, and her decision was clouded by the fact that she considered defendant the primary parent, which only happened because defendant acted unlawfully. He asserts he has a flexible work schedule and family to assist him with caring for the children, which would defray the cost of

24

work-related childcare, and defendant's complaints about affordable living in New Jersey.

We decline to second-guess the trial judge's application of the facts to the statutory factors because that is not our role on appeal.  See R. 2:10-2.  The trial judge's findings are supported by the adequate, substantial, and credible evidence in the record, and she neither abused her discretion nor misapplied the law, in weighing the N.J.S.A. 9:2-4(c) factors.

Many of plaintiff's disagreements with the trial judge's findings, particularly best interests factors two, eight, eleven, twelve, and thirteen, are predicated on his view that defendant's residence with the children is unlawful. However, we affirmed the trial judge's rejection of this argument.

With respect to the balance of plaintiff's arguments as to why the judge erred not based on the children's residence pendente lite, we are unconvinced they would lead to a different outcome.  As to factor one, the circumstances presented do not persuade us that compelling defendant and the children to move back to New Jersey is in the best interests of the children compared to the parenting time awarded plaintiff and the imposition of a parenting coordinator to facilitate it.  The judge's finding under factor three was not based on a prejudice against blended families, but rather a realistic assessment that young

children of varying ages would need time to adjust to one another, which could be disruptive and contrary to their best interests. The evidence supported the fact the parenting time awarded plaintiff would allow the parties' children the space to acclimate to their new siblings better than a fifty-fifty custody arrangement. Plaintiff's argument with the judge's finding under factors four, seven, and nine lack merit. R. 2:11-3(e)(1)(E).

## C.

Plaintiff argues the parties should have a fifty-fifty parenting schedule in New Jersey. He claims the trial judge violated public policy, which promises children "frequent and continuing contact with both parents . . . ." N.J.S.A. 9:2-4. We part ways with plaintiff's interpretation of the statute.

N.J.S.A. 9:2-4 states it is our "public policy . . . to assure minor children of frequent and continuing contact with both parents after the parents have separated . . . and that it is in the public interest to encourage parents to share the rights and responsibilities of child rearing in order to effect this policy." The statute further provides "the rights of both parents shall be equal[,]" ibid., and grants the court authority to assure those rights by means of awarding joint, sole, or "any other" legal and physical custody arrangement that is in the child's best interests, N.J.S.A. 9:2-4(a), (b), and (c).

N.J.S.A. 9:2-4's reference to "frequent and continuing contact with both parents" and that both parents' rights are equal does not mean that courts must award fifty-fifty physical custody. If this were the case, there would be no need for the legislative mandate to balance the best interests factors or for the Family Part's ability to award joint, sole, or any other form of physical custody pursuant to N.J.S.A. 9:2-4(a), (b), and (c).

The mandate of frequent and continuing contact with both parents can be accomplished in myriad ways without the necessity of fifty-fifty custody. Here, this was achieved by the lengthy summer parenting time the trial judge granted plaintiff, in addition to other parenting time order throughout the year, and the daily video and electronic contact between plaintiff and the children.

The language in the statute regarding the equality of each parent's rights does not mean that courts must award fifty-fifty custody. The statute is structured as follows:

> In any proceeding involving the custody of a minor child, the rights of both parents shall be equal and the court shall enter an order which may include:
>
> > a. Joint custody of a minor child to both parents, which is comprised of legal custody or physical custody which shall include: (1) provisions for residential arrangements so that a child shall reside either solely with one parent or

alternatively with each parent in accordance with the needs of the parents and the child; and (2) provisions for consultation between the parents in making major decisions regarding the child's health, education and general welfare;

b. Sole custody to one parent with appropriate parenting time for the noncustodial parent; or

c. Any other custody arrangement as the court may determine to be in the best interests of the child.

[N.J.S.A. 9:2-4.]

The plain language of the statute shows the Legislature intended that both parents have the equal right to seek custody of their children, which the court has the discretion to order in the form of joint, sole, or in any other form that is in the best interests of the children.

Joint physical custody is "rare." Pascale, 140 N.J. at 597. "'[J]oint physical custody' means that the child lives day in and day out with both parents on a rotating basis. Numerous 'parenting times' with a child do not constitute joint physical custody; to constitute joint custody, each parent must exert joint legal and physical custody over the child." Ibid. For these reasons as well, we decline to read into the statute a mandate for fifty-fifty custody. Further, our

review of the facts in the record does not support the conclusion the judge erred by not awarding fifty-fifty custody in New Jersey.

## III.

To the extent we have not addressed an argument raised on appeal it is because it lacks sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3046-23